## WILLIAM R. PADFIELD

*v.*

## CATHARINE PADFIELD.

1. STATUTE OF FRAUDS—*parol contract of sale of land—part performance.* In a suit for dower in lands claimed by the defendant, who was a son of the complainant's deceased husband by a former marriage, the defence set up a parol sale of the land by the father to the son. It appeared the land in question was the home place upon which the father had ever lived from a time previous to the birth of the defendant until after complainant's marriage, and defendant lived with his father on that home place from his birth until after such marriage. The alleged consideration for this pretended contract of sale was this: That long prior to complainant's marriage, the father entered another and different tract of land from the government, in his own name, the son furnishing half the purchase money, the son going into possession and making improvements to the value of $2000 to $3000, alleging no contract, however, in regard to it; that subsequently, but long before complainant's marriage, the son gave up to the father all his claim to the land so entered from the government, and all claim for improvements thereon, and released his father from all claim for wages for labor done after the son became of age;—that in consideration for all this the father "sold and set apart" this home place to the son as his own, subject to the condition that the latter should keep and take care of his father during his life, and the son alleges that thereupon he, in pursuance of said agreement, at once entered into the actual possession of the home farm, and has been in open possession ever since, and has made permanent improvements thereon of the value of $3000 to $4000, and in all things performed his said agreement. At the time of this alleged agreement the father was 64 years of age, having then a former wife living with him on the place, and the son was a single man. All the lands were improved and cultivated by the father and son together, and subsequently to the time of such pretended contract of sale they had a settlement in regard to the profits, in which they were to share equally. The lands were always assessed to the father, and the taxes paid from their proceeds: *Held,* even if the alleged contract were clearly proven, there was not such a part performance as would take the case out of the operation of the Statute of Frauds.

2. It has been held that "the mere possession of land, under a parol agree-

ment of sale, even with the superadded fact of valuable improvements, will not be deemed part performance, if the possession was obtained otherwise than under the contract." The possession here was not taken under the contract and for the purpose of performing it, but the defendant was in the possession at the time of the making of the alleged contract, and had been for a long time before.

3. Furthermore, it does not appear that the defendant was induced by the contract to make the improvements alleged to have been made, over and above what was required by ordinary husbandry, for which he was amply compensated by the rents and profits.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. JEHU BAKER, for the appellant:

The facts in this case exclude complainant's claim of dower in this homestead, 160 acres, and bring the case within the principles laid down in *Hugunin* v. *Cochrane*, 51 Ill. 302, and *Kurtz et al.* v. *Hibner et al.* 55 id. 514. In the latter case the court say: "A court of equity will always enforce a promise upon which reliance is placed, and which induces the expenditure of labor and money in the improvement of land. Such a promise rests upon a valuable consideration. The promisee acts upon the faith of the promise. We can perceive no important distinction between such a promise and a sale."

Mr. JAMES M. DILL, also for the appellant:

"An agreement by the husband to convey before the dower attaches will, if enforced in equity, extinguish the claim to dower." 4 Kent's Com. 50 ; *Rawlings* v. *Adams*, 7 Md. 26 ; *Firestone* v. *Firestone*, 2 Ohio St. 415 ; *Bowie* v. *Berry*, 3 Md. Ch. 359, are cited in support of this proposition.

In *Hugunin* v. *Cochrane*, 51 Ill. 305, our court say: "An agreement to convey, made by a husband before marriage and enforced after the marriage, defeats dower."

Mr. CHARLES W. THOMAS, for the appellee:

The whole theory of appellant's case is, that under a contract to convey, his father gave him possession and he made

improvements, and his own testimony is that the possession of the father was never surrendered, and this alone is enough to overthrow his claim. The case of *Wood* v. *Thornly*, 58 Ill. 464, has many elements in common with this case. There, this court announces the rule in regard to possession to be as follows: "The mere possession of land under a parol agreement of sale, even with the superadded fact of valuable improvements, will not be deemed part performance, if the possession was obtained otherwise than under the contract."

To entitle a party to specific performance, proof must be clear. *Hartwell* v. *Black*, 44 Ill. 301; *Allen* v. *Webb*, 64 id. 342; *Worth* v. *Worth*, 84 id. 442. And the contract also must be fair. *Bowman* v. *Cunningham*, 78 id. 48. And it must be proved as laid and not otherwise. *Cronk* v. *Trumble*, 66 id. 428; *Tieman* v. *Granger*, 65 id. 351. And specific performance is always within the discretion of the court. *Fish* v. *Leser*, 69 id. 364; *Gosse* v. *Jones*, 73 id. 508. And a claim like this was preferred and denied. *Wood* v. *Thornly*, 58 id. 464. A minor has no claim for services where he remains at home and works without an express agreement. *Griffin* v. *National Bank*, 74 Ill. 259.

Equity does not assist executed contracts embraced by the Statute of Frauds. They are governed by the provisions of the statute. Browne on Statute of Frauds, sec. 116. After a contract is executed, it can not be canceled because the statute prevents its proof. *Craig* v. *Van Pelt*, 3 J. J. Marshall, 489. But it must be proved, as provided by the statute, and it is an absurdity to speak of enforcing an executed contract.

In *Kurtz* v. *Hibner*, 55 Ill. 514, and *Fitsimmons* v. *Allen's Heirs*, 39 id. 440, the parties were let into possession under the contract, and there is no similarity between them and this case. The declarations of Thomas Padfield, so much relied upon by counsel for appellant, are entitled to no weight in a case like this. *Worth* v. *Worth*, 84 id. 442. And if they were, they are offset by the declarations of appellant made to

appellee and others, that he had no interest in the land, and would be put off it if appellee married his father.

A different rule obtains between relatives from that which governs transactions of strangers. *Allen* v. *Webb*, 64 Ill. 342; *Wright* v. *Wright*, 31 Mich. 380. And in a case like this a delay of 16 years is fatal. *Rose* v. *Swan*, 56 Ill. 31; *Igelhardt* v. *Gibson*, 56 id. 91.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill for dower in certain lands described in the bill, exhibited December 20, 1873, by Catharine Padfield, as the widow of Thomas Padfield, deceased, against William R. Padfield, one of his children. Complainant was married to the said Thomas Padfield January 19, 1869, he being then 77 years of age, and in April following he conveyed the lands described in the bill to the defendant, complainant refusing to join in the deed. The answer admits complainant's right of dower in one tract containing 100 acres, but denies it in two tracts, one containing 160 acres, the other $38\frac{1}{2}$ acres.

As to the 160 acre tract, the defence set up is substantially this: That before 1856, Thomas Padfield entered from the government a certain 140 acre tract of land in his own name, but that his son William R., the defendant, furnished half the purchase money; that Thomas set apart this tract for William R., and the latter went into possession and made improvements of the value of $2000 to $3000, the answer not alleging that the former ever agreed to convey the land to the latter, nor stating any particular contract as having been made in regard to it. That in 1856, they made this agreement: that William R. gave up to his father all his claim to the 140 acre tract, and all claim for improvements made by him thereon, and released to his father all claim for wages for labor done for the latter after becoming of age, and that the father, in consideration of all this, " sold and set apart " to William R. the said 160 acre tract as his own, subject to the condition that the latter should keep and take care of his father during his

life, and that thereupon the defendant, in pursuance of said agreement, in 1856 entered into the actual possession of the 160 acre tract and has been in open possession of the same ever since, and has made permanent improvements thereon of the value of $3000 to $4000, and in all things performed his said agreement.

As to the 38½ acre tract the defence set up is that it was purchased in 1860 and 1863 in two parcels by the defendant and his father, each furnishing half the purchase money; that the deeds were made to the father, and that before the marriage of the father with complainant, defendant bought his father's interest in the tract and went into possession, and has so remained to this time.

And it is further set up, that in view of the equities which defendant had in connection with said 160 and 38½ acre tracts prior to the marriage of the said Thomas and the complainant, the circuit court of St. Clair county in this State, at its August term, 1869, in a suit therein pending in which defendant was complainant and said Thomas Padfield was defendant, (the bill in said suit having been dismissed as to said Catharine Padfield, who was originally made a defendant therein) decreed, among other things, in substance, that the fee simple title to the two last mentioned tracts of land should be conveyed to this defendant, in pursuance of which decree the master in chancery of said county executed and delivered to this defendant a deed, of the date of December 16, 1869, conveying to him the fee simple title to the said two tracts of land.

The case on the part of the defendant which the evidence tends to develop is, in general, that all that there was of any sale or contract to convey the lands, before the time of complainant's marriage, was by parol; that the 160 acre tract in question was the home place of Thomas Padfield upon which he had ever lived from a time previous to the birth of defendant until after complainant's marriage, and that defendant lived with his father on that home place from his birth until after such marriage; that at the time of the alleged contract in

1856, that Thomas would give to William R. the 160 acres, or home place, if the latter would live with the former and take care of him, Thomas Padfield was 64 years of age, having then a former wife living with him on the place, and William R. was a single man; that all the lands were improved and cultivated by Thomas and William R. together, they sharing equally the profits, and that in 1869 they made a settlement in regard thereto, and over $8000 in notes came to William R. as his share of the profits.   The lands were always assessed to Thomas and the taxes paid from their proceeds.

Had the parol contract here attempted to be proved been satisfactorily established, there would not have been sufficient acts of part performance to take the case out of the operation of the Statute of Frauds, under the decision of this court in *Wood* v. *Thornly et al.* 58 Ill. 464.   That was a like case of a parol promise by a father to his two sons who were living with him upon his farm, and had been since coming of age, to give them the farm in consideration of their past services, and that they would furnish him a home in the family during his lifetime.

It was there said, in speaking of the part performance which would take a parol contract out of the statute: " The mere possession of land, under a parol agreement of sale, even with the superadded fact of valuable improvements, will not be deemed part performance, if the possession was obtained otherwise than under the contract." That case was, in its facts, quite like the present, and its authority is sufficient to control the decision here upon this particular point adversely to the defendant.   The possession here was not taken under the contract and for the purpose of performing it, but the defendant was in the possession at the time of the making of the alleged contract, and had been for a long time before. And in respect of improvements it may be said here, as there, that we fail to perceive from the evidence, that the defendant was induced by the contract to make any improvements on the farm over and above what was required by ordinary hus-

bandry, for which he was amply compensated by the rents and profits.

As to the evidence of the contract, it rests upon the testimony of defendant and his brother James, and there are facts and circumstances in the case contradictory to it in several respects. Without any special review of the evidence, we think it is sufficient to say of it that in our view it comes short of being of that clear and satisfactory character which a court of equity requires for the establishment of a contract not in writing, when specific performance thereof is sought. *Allen* v. *Webb et al.* 64 Ill. 342; *Gosse* v. *Jones,* 73 id. 508; and for further authorities in the case, see *Cronk et al.* v. *Trumble,* 66 id. 428; *Worth* v. *Worth et al.* 84 id. 442.

The suit of William R. Padfield against Thomas Padfield, brought in 1869, after the marriage of complainant, for conveyance of the title, was evidently but a collusive proceeding between the parties for the purpose of defeating the dower right of complainant, and the decree therein in favor of William R. we do not consider, as against her, entitled to any regard as an adjudication in favor of his alleged equitable title.

Upon the whole case, we are of opinion that the court below was warranted in coming to the conclusion that the existence of an equitable title to the lands in the defendant, at the time of the marriage of complainant with Thomas Padfield, was not sufficiently established by the proofs, and that it decreed rightly in favor of complainant.

The decree is therefore affirmed.

*Decree affirmed.*