Syllabus.

# EDWARD W. MORRISON *et al.*

*v.*

# HARRY HERRICK *et al.*

*Filed at Ottawa October 31, 1889.*

1. STATUTE OF FRAUDS—*verbal sale or lease of land—part perform-ance, to take a case out of the statute.* In equity, verbal contracts for the sale of lands will be enforced when they have been so far performed by one party that to permit the other party to repudiate them, would, of itself, be a fraud. Equity will not permit a suitor to make use of the Statute of Frauds as a means of perpetrating a fraud, as that would defeat the very purpose for which the statute was enacted.

2. Taking and retaining possession of land by the purchaser, with the consent of the vendor, and making valuable improvements, consti-tute such part performance as will justify a court of equity in enforcing the oral contract.

3. To take a verbal contract out of the Statute of Frauds, however, the acts of part performance, whatever they may be, must refer exclu-sively to the contract, and be such as would not have been performed but for the contract. They must be such as can not be explained con-sistently with any other contract than the one alleged,—that is, they must refer to, result from, and be done in pursuance of, such contract.

4. If, therefore, possession is relied upon as an act of part perform-ance, it must be possession under the contract sought to be enforced. The continuance of possession taken before the contract was made, is not usually held to be sufficient. This rule applies especially to cases where the previous holding was under a lease.

5. SAME—*extension of lease by verbal agreement—continued posses-sion—making improvements, etc.* Where, before the termination of a lease, there was an oral agreement between the landlord and tenant for a new lease of five years, the fact that the tenant refused to accept a new lease for only one year, upon the express ground that he was en-titled to a lease for five years, and the promise of the lessor to make a lease for the five years, is evidence that the possession of the lessee after the termination of the original lease was under the oral contract for the new lease of five years, and not a mere holding over.

6. The expenditure of money by the tenant in making costly im-provements on the premises, on the faith of an oral agreement for a term of years, may be viewed, not only as constituting, of itself, part performance sufficient to take the case out of the statute, but as fur-nishing strong, if not conclusive, evidence that the possession is con-tinued under the oral contract, and not under the original lease.

7. Notice—*possession of tenant—under verbal agreement for a new lease.* The possession of a tenant under an oral contract with his landlord for a further term, will be notice to a third party who accepts a lease of the same premises from the landlord, of the tenant's rights under the oral contract.

8. Purchaser *without notice—but who has paid nothing.* A person leasing premises, who pays nothing before he has actual knowledge of the rights of a prior tenant for a renewal of his lease, will not be protected as a *bona fide* and innocent purchaser.

9. Laches—*not asserting a right until it is questioned.* Where one entered into the occupancy of premises under a lease, and continues in possession after the expiration of the term, under a verbal agreement for a new lease for a term of years, and is in the full enjoyment of his rights under the verbal contract, he is under no legal duty to bring suit in respect of such rights, at least until he is in some way apprised that they are about to be threatened or denied.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. Richard S. Tuthill, Judge, presiding.

Mr. L. H. Boutell, for the appellants:

As the appellees were in possession, under their written lease, for one year, and not under their equitable claim, their possession was notice to Miner, Beal & Co. only of the title under which they entered. *McMahon* v. *Griffin,* 3 Pick. 154; *Matthews* v. *Demeritt,* 22 Me. 215; *Grundies* v. *Reid,* 107 Ill. 304; *Pickerell* v. *Morss,* 97 id. 220.

To take a verbal contract for the sale or lease of land out of the Statute of Frauds on the ground of part performance, there must be possession under the contract. The possession of a tenant under a prior lease, or who holds over, is not sufficient. *Wood* v. *Thornly,* 58 Ill. 469; *Padfield* v. *Padfield,* 92 id. 203; *Pickerell* v. *Morss,* 97 id. 220; *Kaufman* v. *Cook,* 114 id. 11; *Whiting* v. *Opera Co.* 88 Pa. St. 101; *Mahana* v. *Blunt,* 20 Iowa, 42; *Johnston* v. *Glancey,* 4 Blackf. 94; *Johns* v. *Johns,* 67 Ind. 440; *Carlisle* v. *Brennan,* id. 12; *Eargood's Estate,* 1 Pearson, (Pa.) 400.

The possession of the appellees was not of such a nature as to entitle them to a decree for a specific performance, it not being under the contract. *Wood* v. *Thornly*, 58 Ill. 469; *Padfield* v. *Padfield*, 92 id. 203; *Pickerell* v. *Morss*, 97 id. 220; *Kaufman* v. *Cook*, 114 id. 11; *Whiting* v. *Opera Co.* 88 Pa. St. 101; *Mahana* v. *Blunt*, 20 Iowa, 142; *Johnston* v. *Glancey*, 4 Blackf. 94; *Johns* v. *Johns*, 67 Ind. 440; *Carlisle* v. *Brennan*, id. 12; *Eargood's Estate*, 1 Pearson, (Pa.) 400.

In respect to Miner, Beal & Co., appellees were guilty of *laches* in not commencing proceedings to enforce their rights at an earlier day, and in not notifying these appellants of their claims after they had notice that these appellants were about to execute a lease of the premises.

If the court should be of opinion that the appellees have a claim against Morrison, the decree should not be for specific performance, but for damages to the extent of their permanent improvements, in view of the rights of these appellants, as well as of the peculiar character of appellees' possession. *Worth* v. *Worth*, 84 Ill. 442; *Lord Pengall* v. *Ross*, 2 Eq. Ca. Ab. 46, pl. 12; *Anthony* v. *Leftwich*, 3 Rand. (Va.) 238; *Johnston* v. *Glancey*, 4 Blackf. 95; *Phillips* v. *Thompson*, 1 Johns. Ch. 131; *Parkhurst* v. *VanCortlandt*, id. 273; *Wack* v. *Sorber*, 2 Whart. 387; *Heft* v. *McGill*, 3 Barr, 256; *Harden* v. *Hays*, 9 id. 151; *Goodwin* v. *Lym*, 4 Port. (Ala.) 297; *Boze* v. *Davis*, 14 Texas, 331; *Albea* v. *Griffin*, 2 D. & B. Eq. 9; *Baker* v. *Carson*, 1 id. 381; *Dunn* v. *Moore*, 3 Ired. Eq. 364; *King* v. *Thompson*, 9 Pet. 204; *Evans* v. *Battle*, 19 Ala. 398.

Mr. S. K. Dow, for the appellant Edward W. Morrison:

In order to take an oral agreement in respect to an interest in land, not to be performed within one year, out of the operation of the Statute of Frauds,—if it is sought to do this by proving that valuable improvements have been made upon the premises by the lessee or grantee, as the case may be, upon the faith of an oral agreement,—it must be clearly shown

that such improvements were made by the party while in possession of the premises acquired under and by virtue of the oral agreement sought to be enforced, and not otherwise. This is the settled law of Illinois, established by the following cases: *Wood* v. *Thornly*, 58 Ill. 469; *Padfield* v. *Padfield*, 92 id. 198; *Bohanan* v. *Bohanan*, 96 id. 591; *Warren* v. *Warren*, 105 id. 568; *Kaufman* v. *Cook*, 114 id. 11; *Long* v. *Long*, 118 id. 638.

Messrs. SMITH & FORCH, for the appellees:

Part performance will, in equity, take a parol agreement out of the Statute of Frauds. If the tenant has been put to expense on the faith of a promise of a lease, equity will decree its execution. *Earl of Aylesford's case*, 2 Strange, 783.

If, at the time of the agreement, the complainant be in possession under a lease, whether expired or not, his possession will be referred to this lease, and, of itself, will be no evidence of a new agreement for a further lease. Pomeroy on Contracts, secs. 123-125.

But when the part performance consists of valuable improvements and large outlays, then the fact of possession cuts no figure, provided the improvements and outlays are of such an extent and kind that they are reasonably referable to an agreement for a new lease. Pomeroy on Contracts, secs. 124, 125; Fry on Specific Perf. secs. 401, 402; Browne on Statute of Frauds, sec. 478; Roberts on Frauds, 132.

The doctrine of equitable estoppel is applied when to allow the party to repudiate the contract would operate as a fraud. *Warren* v. *Warren*, 105 Ill. 568; *Irwin* v. *Dyke*, 114 id. 302.

When taking possession and making permanent improvements are relied on as sufficient part performance, these acts must be performed after and under the agreement. Pomeroy on Contracts, sec. 106; *Mundy* v. *Joliffe*, 5 M. & C. 177; *Wright* v. *Puckett*, 22 Gratt. 374; *Neale* v. *Neale*, 9 Wall. 112; *Swain* v. *Seamans*, id. 254.

Where the grantor in a deed is found in possession after its execution, it is notice to the world of any equitable interest which he may have, as against the legal title which he himself has thus conveyed. *Metropolitan Bank* v. *Godfrey*, 23 Ill. 579; *Smith* v. *Jackson*, 76 id. 254; *Flint* v. *Lewis*, 61 id. 299; *Russell* v. *Howard*, 59 id. 335; *Strong* v. *Shea*, 83 id. 575; *Terry* v. *Pfeifer*, 18 Wis. 510.

A party who has paid nothing before notice of an adverse claim is not a *bona fide* purchaser. *Brown* v. *Welch*, 18 Ill. 343.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

In this case, Harry Herrick and Charles K. Herrick filed their bill in chancery against Edward W Morrison, to compel the specific performance by him of an oral agreement, alleged to have been made on or about June 1, 1884, for a lease, for a term of five years from May 1, 1885, of a certain store and basement known as number 115, East Madison street, Chicago. George A. Miner and others, comprising the firm of Miner, Beal & Co., were also made parties defendant, it being alleged that said Morrison had fraudulently executed to them a lease of said premises, and had entered into an unlawful and fraudulent conspiracy with them to eject the complainants therefrom, and to deprive them of their right to the possession and enjoyment thereof. The bill prayed that said lease to Miner, Beal & Co. be held to be subject to the complainants' rights and inoperative as against them, and that said Miner, Beal & Co. be restrained from interfering with the complainants' possession of said premises.

Defendant Morrison answered denying said oral agreement and setting up the Statute of Frauds, and also admitting that he had demised said premises, together with certain other premises thereto adjoining, to Miner, Beal & Co. for the term of five years from May 1, 1886. Miner, Beal & Co. answered and filed their cross-bill, asserting the validity of said lease

to them, and the priority of their rights thereunder, and praying that the complainants in the original bill be decreed to surrender and deliver up said premises to them. A demurrer to the cross-bill was sustained, and the cause coming on for hearing as to the original bill on pleadings and proofs, a decree was rendered in accordance with the prayer of said bill. Said decree was affirmed by the Appellate Court, and the record is now brought here on appeal from that court.

It appears that Edward W. Morrison is, and for many years has been, the owner of a four-story business building on the north-east corner of Clark and East Madison streets, Chicago. The first story of said building is divided up so as to be used by several occupants for mercantile purposes, there being, in addition to one or more stores on the corner not in controversy here, three stores fronting on East Madison street known as numbers 113, 115 and 117, and a double store fronting on Clark street known as 131 and 133. For several years prior to the time said oral agreement is alleged to have been made, the complainants had occupied number 115, East Madison street, as a hat and cap store, under yearly leases executed by Morrison to them, and at the date of said oral agreement, they were occupying it under a written lease for the term commencing May 1, 1884, and ending April 30, 1885, the rent reserved being $3000 payable in monthly installments of $250 each.

The allegations of the bill in relation to the making of the oral agreement and the circumstances connected therewith are, in substance, that the complainants, during the time they had occupied said premises, had been doing a flourishing, profitable and constantly increasing business, and that they and their place of business had become widely known to the public; that for the purpose of retaining their position and competing successfully with rival establishments, and of still extending their business and patronage, it became very desirable that they should make extensive and costly improvements

in their store, provided they could obtain a further lease for a sufficient length of time to warrant such expenditure ; that they so informed said Morrison, and proposed to him, that if he would grant to them a lease of said premises for a term of five years, to commence at the expiration of their then existing lease, they would make certain expensive and permanent improvements in said store, and would also put in new and expensive cases and fixtures, thus rendering it as fine if not the finest and most beautiful and attractive hat and cap store in the city of Chicago ; that said Morrison approved of and assented to said proposition, and that it was thereupon agreed between him and the complainants that he would execute to them a further lease of said premises for the term of five years, beginning on the first day of May, 1885, and continuing until the 30th day of April, 1890, at a yearly rental of $3000 for the first year, payable in monthly installments of $250, and at a yearly rental of $3300 for each of the four remaining years, payable in monthly installments of $275 each.

It appears from the evidence, without any material controversy, that shortly after the time this agreement for a lease is alleged to have been made, the complainants proceeded to make their proposed improvements, those of a permanent character consisting of expensive panel work upon the ceiling, fresco painting on the walls, remodeling the front doors and windows and putting in stained or cathedral glass, costing in all about $1700. They also constructed new cases of hard wood and plate glass, fitted and adapted to the store, with pulleys to raise and lower the doors and sashes, and also plate glass mirrors fitted and adapted to the spaces which they were to occupy on the walls, the total expense of such fixtures being about $3300. To make room for these fixtures, those previously in use, and which cost $700, were removed and disposed of for only $150, that being all they would bring. A new furnace and new gas-fittings were put in at a cost of about $490. These expenditures were all made during the

months of July and August, 1884. The time occupied in fitting up the store in the manner above indicated was from four to six weeks, and during that time the complainants' business was largely if not wholly interrupted, thus causing them considerable additional loss.

The evidence in relation to the alleged contract for a lease is in some degree conflicting, but after giving it careful consideration, we are of the opinion that it is sufficient to warrant the finding of the chancellor that such contract was in fact made. We are not disposed to attempt an analysis of said evidence in detail, but shall content ourselves with the general statement that four witnesses testify positively to the making of the contract, viz., Isaac Gardner, Louis Kohn and the complainants, and their testimony is to the effect that, sometime in the latter part of May or the first part of June, 1884, they and the defendant Morrison were together in the complainants' store, and that a conversation was then and there had between Morrison and the complainants, in which the complainants stated their desire to fit up their store so as to make it one of the most attractive in Chicago, by putting into it elaborate and costly improvements and fixtures, at an expense, as they then estimated, of from $6000 to $10,000, and that they would do so, provided they could get from Morrison a lease for the term of five years from the expiration of their then existing term; that Morrison thereupon agreed with the complainants, in view of their proposed heavy expenditures, to give them a lease of said premises from May 1, 1885, to April 30, 1890, the rent to be $3000 for the first year, and $3300 per year for the four remaining years. The testimony of these witnesses is corroborated, in some degree at least, by the evidence of several witnesses who testify to certain subsequent admissions of Morrison, both express and implied, which tend to show that he had rented said premises to the complainants for a term of several years. One of the complainants also testifies that, about May 1, 1885, he was noti-

fied to go to Morrison's office to sign the lease, and that on going there he was presented with the draft of a lease for only one year, which he refused to sign, and that Morrison, on his attention being called to the fact that the draft was not in accordance with the agreement, said that it was his clerk's mistake and that he would have it corrected.

Defendant Morrison, on the other hand, testifies that no such contract as that alleged by the complainants was made, and that no such conversation as that testified to by their witnesses ever took place. His testimony, however, receives but little if any corroboration from the other witnesses. It is in direct conflict with that of all those who claim to have been present at the time the contract is said to have been made, and the only mode in which his counsel have undertaken to bolster up his testimony is, by indulging in somewhat captious criticisms upon the account of the transaction given by the complainants' witnesses, and by urging the improbability that business men like the complainants would be content to rely, in so important a matter, upon the mere oral agreement of their lessor. The chancellor who tried the cause and who saw and heard the witnesses, reached the conclusion that the testimony of the complainants and their witnesses in relation to the contract was true, and the record, so far as we can see, furnishes no ground which can justify us in holding the contrary.

Beyond what has already been stated, no effort seems to have been made by the complainants, prior to the commencement of their suit, to obtain from Morrison the execution of a lease in pursuance of his oral agreement. They claim to have been on very friendly, and even intimate terms with him, and that they therefore trusted him more implicitly than they would have done under other circumstances. On the 30th day of April, 1885, the complainants' term under their former lease expired, but they remained in possession and continued to pay Morrison rent at the rate of $3000 per year. They claim that

their possession, on and after May 1, 1885, was under the oral lease for five years, while Morrison and the other defendants insist that the complainants, by remaining in possession, merely assumed the position of tenants holding over under their former lease.

It appears that for several years prior to May 1, 1885, Miner, Beal & Co. had been occupying number 117, East Madison street, and also numbers 131 and 133, Clark street, as a clothing store, under leases from Morrison.   In the summer of 1885, desiring to enlarge their establishment, they entered into a negotiation with Morrison for a lease, for a term commencing May 1, 1886, of the premises then occupied by them, and also of numbers 113 ànd 115, East Madison street.   These negotiations resulted, about September 1, 1885, in the execution by Morrison to Miner, Beal & Co. of a written lease demising to them all of the foregoing premises for the term of five years from May 1, 1886.   The complainants seem to have had no notice of said negotiations or of the resulting lease, until a considerable time after the lease was executed, and then having heard of them by rumor, they made inquiries and ascertained the facts, and shortly afterward they brought this suit.

Regarding the oral contract for a lease as sufficiently proved, the question arises whether such part performance has been shown as will take it out of the operation of the Statute of Frauds.   The authorities in this country as to what acts of part performance will be sufficient, in the view of a court of equity, to take an oral contract for the sale or lease of lands out of the statute are not altogether harmonious, and this court has not been disposed to carry the doctrine of part performance quite to the extent to which it has been carried by the decisions of some of the courts.   Certain acts of part performance, however, have uniformly been held sufficient. Thus, we have held in many cases, that taking possession of the land with the consent of the vendor, paying the purchase

money, and making lasting and valuable improvements, are sufficient acts of part performance to justify the specific performance of an oral contract of purchase. *Thornton* v. *Heirs of Henry*, 2 Scam. 218; *Updike* v. *Armstrong*, 3 id. 564; *Stevens* v. *Wheeler*, 25 Ill. 300; *Blunt* v. *Tomlin*, 27 id. 93; *Mason* v. *Bair*, 33 id. 194; *Fleming* v. *Carter*, 70 id. 286; *Laird* v. *Allen*, 82 id. 43; *McNamara* v. *Garrity*, 106 id. 384; *Gorham* v. *Dodge*, 122 id. 528. In other cases it is held that taking possession and paying the purchase money is sufficient. *Fitzsimmons* v. *Allen's Admr.* 39 Ill. 440; *Temple* v. *Johnson*, 71 id. 13; *Ferbrache* v. *Ferbrache*, 110 id. 210; *Ramsey* v. *Liston*, 25 id. 114; *Shirley* v. *Spencer*, 4 Gilm. 583. In other cases it is held that taking possession and making valuable improvements is sufficient part performance. *Keys* v. *Test*, 33 Ill. 316; *Kurtz* v. *Hibner*, 55 id. 514; *Wood* v. *Thornly*, 58 id. 464; *Langston* v. *Bates*, 84 id. 524; *Kaufman* v. *Cook*, 114 id. 11; *Bohanan* v. *Bohanan*, 96 id. 591; *Bright* v. *Bright*, 41 id. 97; *Padfield* v. *Padfield*, 92 id. 198. It is under the rule established by the decisions last cited that the complainants in this case must base their right to have their oral contract for a lease specifically enforced.

The evidence shows beyond controversy that the complainants expended large sums of money in making permanent improvements upon the demised premises and in fitting up and furnishing the same for use in carrying on their business, and it is equally beyond controversy that these expenditures were made under and in reliance upon the oral contract for a lease for a further term of five years. So far then as the making of valuable improvements can constitute an element of part performance, the complainants have established their right to a decree. It is true the improvements were all made before the term contemplated by the oral agreement was to commence, and while the complainants were in possession under their former lease, but that circumstance does not seem to us to be material, so long as the improvements were in fact

41.—130 ILL.

made in reliance upon and in pursuance of the provisions of the oral agreement.

. The more difficult question relates to the possession which the complainants must establish and rely upon as an act in part performance. It is undoubtedly the rule that acts of part performance, whatever they may be, must refer exclusively to the contract, and be such as would not have been performed but for such contract. They must be such as can not be explained consistently with any other contract than the one alleged, that is to say, they must refer to, result from, and be done in pursuance of such contract. If therefore possession is relied upon as an act of part performance, it must be possession under the contract sought to be enforced. The continuance of possession taken before the contract was made is accordingly not usually held to be sufficient. 2 Reed on Stat. of Frauds, sec. 585. This rule applies especially to cases where the previous holding is under a lease, for as the tenant may lawfully continue in possession until notice to quit, such continuance in possession is presumptively referable to the lease. It has therefore been sometimes questioned whether, as between landlord and tenant, part performance is possible. But the better doctrine would seem to be, that one continuing in possession is at liberty to prove, if he can, that his possession, after the termination of the former lease, is under the oral contract.

The expenditure of money by the tenant in making improvements on the premises, on the faith of the oral agreement for a lease, may be viewed, not only as constituting of itself an act of part performance, but as furnishing strong if not conclusive evidence that the possession is continued under the oral contract and not under the lease. On this subject it is said by Mr. Browne: "It is always regarded as strongly confirmatory of the right of a plaintiff seeking the specific performance of a verbal contract for an estate in land, that he has proceeded, upon the faith of the contract, and with the

knowledge of the vendor, to expend money in improving the land. In cases of purchasers who were, before and at the time of the contract, tenants of the same land, it is often conclusive of the nature and animus of their continued possession; thus serving to explain and define one act of part performance by means of a superadded and corroboratory act. The propriety of admitting this expenditure of money in improvements as a reason for enforcing the contract, is much more clear upon the equitable view of preventing fraud, than is that of admitting the taking and delivery of possession. For in many cases such improvements are carried to that point that they are quite incapable of being compensated in damages." Browne on Statute of Frauds, sec. 487.

In *Mundy* v. *Joliffe*, 5 Mylne & Craig, 167, a tenant who went into possession of premises under a former lease, obtained from his landlord an oral contract for a renewal of his lease for a further term, said contract stipulating, among other things, for the making of certain improvements on the demised premises. The tenant continued in possession, and after the stipulated improvements were made, brought his bill for a specific performance of the contract, and it was held, as a matter about which there could be no doubt, that a sufficient part performance was shown.

In *Pfiffner* v. *S. & St. P. R. R. Co.* 23 Minn. 343, it was held, that the making of substantial improvements pursuant to an oral agreement to convey the land improved, by a vendee who was in possession prior to and at the time of the agreement, is such part performance as takes the agreement out of the Statute of Frauds.

In *Shillibeer* v. *Jarvis*, 8 DeG., M. & G. 79, the lessee under an oral agreement for a lease was wrongfully and without the authority of the lessor, let into possession, but being in possession, made certain repairs stipulated for in the agreement, and it was held that while the possession, being unauthorized, would not be deemed a part performance, the making of the

repairs was sufficient to take the case out of the statute ; that if the delivery of possession had been authorized by the lessor, there would have been two acts of part performance.

In *Jones* v. *Tate*, 16 Fla. 216, a tenant in possession under a lease entered into an oral agreement with his landlord for a purchase of the demised premises. After making the agreement, he continued in possession and made valuable improvements on the premises, and it was held that the improvements constituted a sufficient part performance. See also *Ewing* v. *Gordon*, 49 N. H. 344 ; *Wills* v. *Stradling*, 3 Ves. Jr. 381.

We are not disposed to depart from the rule to which this court has heretofore adhered, that to take an oral agreement for an estate in lands out of the Statute of Frauds, there must be both lasting and valuable improvements put upon the land and possession taken under the contract. The only rule we seek to derive from the authorities above cited is one of evidence. It is, that where a party claiming under an oral agreement was in possession under a prior agreement, and continues in possession without interruption, the fact that he has put lasting and valuable improvements upon the premises under and in part performance of the oral agreement may be resorted to as evidence showing or tending to show that his possession, after he became entitled thereto under the oral agreement, is held under that agreement.

Applying this rule to the present case, we are disposed to hold, that, while, *prima facie*, the complainants, by remaining in possession after the expiration of the term to their former lease, assumed the position of tenants holding over, the presumption that they did so is not conclusive, but is subject to be rebutted by evidence tending to a contrary conclusion. Of this character is the evidence of the expenditures made by them by way of improvements under and in performance of their oral agreement. Those expenditures serve to explain and characterize their subsequent holding over after the termination of their former lease. Presumptions are thereby raised

which are sufficiently cogent to overcome the ordinary presumption that a tenant holding over does so under his former lease. It is against all ordinary probability that, after having expended $6000 or over in reliance upon and in performance of the agreement for a lease for five years, they were content to assume the attitude of mere tenants holding over, thus placing themselves in a position where their landlord would be at liberty to terminate their tenancy absolutely at the expiration of the first year, and thus deprive them, without the possibility of adequate recompense, of much the larger part of the benefit to be derived from their expenditures.

But we are not without other and direct evidence that their possession, after April 30, 1885, was held, so far at least as any election on their part could make it so, under the agreement for the five year lease. On or shortly after May 1, 1885, when presented by Morrison with the draft of a lease for one year and requested to sign it, they refused to sign on the distinct ground that they were entitled to a lease for five years. This was an assertion of their right to possession under the oral contract, and a repudiation of any other tenancy, and is evidence that, so far as their intention went, the possession was held by them after the expiration of the former lease, under the oral contract. Morrison, according to the testimony of the complainant to whom the draft of the one year lease was presented, admitted that the lease was so drawn by mistake and promised to have it corrected. This admission and promise may be taken as a recognition of the position assumed by the complainants, and as evidence of an assent to their possession in the character in which they claimed to hold it.

But it is insisted that the doctrines above enunciated are not in harmony with the previous decisions of this court. We are referred to *Wood* v. *Thornly*, 58 Ill. 464, where it is claimed a different rule is laid down. In that case a father entered into a verbal contract with his two sons, in which he agreed, in consideration of their past services, and for the further con-

sideration, among other things, that they would furnish him a permanent home so long as he should live, to convey to them certain lands. The conveyances were drawn up, but before they were signed, some misunderstanding arose in consequence of which the father refused to execute them or to be bound by the contract. The sons had lived on and worked the land for several years after attaining their majority, and after the refusal of their father to make said conveyances, they continued as before in possession of the land, working it as their own, paying the taxes, and retaining the proceeds for their own benefit, until the death of their father. The evidence failed to show that they were induced by the contract to make any improvements on the land, over and above what were required by ordinary husbandry, and for which they were amply compensated by the rents and profits. In the course of the opinion it was said : "To constitute such performance as will avoid the statute, it must clearly and distinctly appear that the party entered into possession under the agreement itself, and was allowed and induced to make expenditures of money, and to make valuable and permanent improvements. The mere possession of land, under a parol agreement of sale, even with the superadded fact of valuable improvements, will not be deemed part performance, if the possession was obtained otherwise than under the contract." Specific performance was denied on the ground that the possession was not shown to have been taken under the oral contract. As no improvements appear to have been made, the question did not arise as to whether or how far the making of valuable permanent improvements in pursuance of the contract might have served to explain and give character to the possession, so as to prove that possession was in fact being held under the oral contract, though originally obtained in some other way.

Very much the same thing may be said of *Padfield* v. *Padfield,* 92 Ill. 198, where the foregoing language of the opinion in *Wood* v. *Thornly,* was cited with approval. That was also

a case of a contract between father and son, and the evidence, both as to possession and improvements, was substantially the same as in *Wood* v. *Thornly.* No improvements being shown, the case was decided on the ground that possession was not shown to have been taken in pursuance of the contract. What was said in relation to improvements was in no way necessary to the decision of the case.

In *Pickerell* v. *Morss,* 97 Ill. 220, the sole question was whether possession was held under the oral contract, the legal effect of improvements put upon the land in pursuance of the contract not being presented. *Kaufman* v. *Cook,* 114 Ill. 11, was decided upon the ground that, at the time the possession was taken and the improvements made, the contract relied upon was one which would not have been binding even if it had been in writing. In none of the foregoing cases was the question now before us presented for decision.

The remaining questions in the case will require but few words. It is claimed that Miner, Beal & Co. took their lease without notice, actual or constructive, of the oral agreement between Morrison and the complainants, and that they should therefore be preferred as *bona fide* purchasers for value. To this claim there seem to be two sufficient answers. In the first place, so long as the complainants must be deemed to have been in actual possession under their oral contract at the time the lease to Miner, Beal & Co. was executed, we see no reason why such possession should not be deemed constructive or implied notice to them of the complainants' rights. In the second place, it does not appear that Miner, Beal & Co., at the time they are shown to have received actual notice of the oral contract with the complainants, had paid any rent or expended any money under the lease to them. The term of their lease did not commence to run until May 1, 1886, and the bill in this case had been filed, and Miner, Beal & Co. had entered their appearance in the suit a considerable time prior to that.

There is no evidence that Miner, Beal & Co., at the time they were charged with full knowledge of the averments of the bill had paid out a dollar, either by way of rent or otherwise, on the faith of Morrison's lease to them.

Nor are we able to see any force in the charge that the complainants were guilty of laches in enforcing their rights. They were in possession and in full enjoyment of their rights under the oral contract, and they were under no legal duty to bring any suit in respect to said rights, at least until they were in some way apprised of the fact that such rights were about to be threatened or denied. Very promptly after the complainants discovered that Morrison had repudiated his oral agreement and executed a lease to Miner, Beal & Co., was this suit instituted.

The mere fact that the complainants were content to trust to Morrison's oral agreement, however unbusinesslike it may have been to do so, was not laches. Morrison alone could interpose the Statute of Frauds. The complainants had a right to rely upon his oral promise, and the fact that they did so furnishes no ground of complaint, either to him or to Miner, Beal & Co.

After a patient examination of the entire record, and giving an attentive consideration to the various suggestions of counsel, we are of the opinion that the decree of the Circuit Court is sustained by the evidence. The judgment of the Appellate Court affirming said decree will be affirmed.

*Judgment affirmed.*