[Civ. No. 6266.   Third Appellate District.—February 28, 1941.]

SAN FRANCISCO BANK (a Corporation), Respondent, v. ALBERT LANGER et al., Appellants.

264

Johnson & Brawman for Appellants.

Tapscott & Tapscott and Orrick, Dahlquist, Neff & Herrington for Respondent.

THOMPSON, J.—The defendants and cross-complainants have appealed from a judgment quieting title in plaintiff and cross-defendant to all the water flowing from springs located on its property through natural channels on the same land. The defendants were restrained from interfering with the flow of water in those channels and damages in the sum of $150 were assessed against them for diverting the water by means of a ditch which they constructed. The defendants claimed title to the water flowing in the ditch as owners of the land riparian thereto.

The respective parties to this action are owners of adjoining farms in Siskiyou County which are separated by a fence called the "Langer fence" extending north and south between the property of plaintiff in Section 12, Township 47 North, Range 1 East, M. D. B. & M. and the property of defendants

in Sections 7 and 18, Township 47 North, Range 2 East, M. D. B. & M. The defendants' land is situated east of the fence and the plaintiff's property is west of that fence.

The amended complaint alleges that plaintiff is the owner of the particularly-described land adjacent to the fence on the western side thereof, upon which land there are located certain springs called "Jack Springs"; that the water of those springs flows in considerable quantity northerly upon plaintiff's land in natural channels emptying into a slough; that the water first flows through one channel for a distance of 160 feet from the springs, and then separates into two channels, both of which extend northerly upon plaintiff's land to the slough; that the defendants wrongfully obstructed the water in the easterly channel and diverted it to their own land east of the fence by means of a ditch which they constructed, to plaintiff's damage in a specified sum.

It is not contended the defendants obtained title to the water by adverse possession. Adverse possession of the water in question was neither pleaded by the defendants nor proved at the trial.

The defendants filed an answer and cross-complaint denying the material allegations of the complaint, except that it was admitted Jack Springs were located on the property described in the complaint and that the water flowed in natural channels northerly therefrom a short distance and then divided into two channels, the easterly one of which, it is asserted, carried the bulk of the water and extends over and across the property of defendants, upon which land they have used the water for many years for agricultural and irrigation purposes, and that they are the owners and entitled to the possession of all the water flowing in that branch of the channel.

In an answer to the cross-complaint the plaintiff denied the affirmative allegations thereof. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiff and cross-defendant in every material respect. A judgment was thereupon rendered quieting title in plaintiff and cross-defendant to all of the water from the springs flowing in both branches of the channel, enjoining the defendants from claiming title thereto and from diverting the water therefrom. Damages were awarded plaintiff in the sum of $150. From that judgment the defendants have appealed.

The appellants contend that the findings and judg-

ment are not supported by the evidence. It is asserted the evidence shows, without substantial dispute, that a portion of the water from the springs flows in a natural channel easterly upon defendants' land, entitling them, as riparian owners of the land adjacent thereto, to the use of that water. In support of the foregoing claim, it is maintained the topography and elevations, shown upon maps which were received in evidence, prove that the water from the springs would naturally flow easterly upon the land of the defendants.

We are of the opinion the findings and judgment are adequately supported by the evidence. The court specifically determined that the springs were located on plaintiff's land; that the water from the springs flowed northerly therefrom in natural channels which are also located on plaintiff's land, and empties into a slough; that none of the water from the springs naturally flows in a channel upon the land of the defendants; that defendants wrongfully obstructed the flow of water in the easterly channel and diverted it therefrom to their land by means of "ditches, obstructions and other works", constructed by them, to plaintiff's damage in the sum of $150, and that plaintiff is the owner and entitled to the use and possession of all of the water from Jack Springs.

It would be an idle task to attempt to recite the evidence in support of the findings and judgment. There is a conflict of testimony. There is, however, substantial evidence that until some time between 1919 and 1926 the water from the springs flowed northerly in two natural channels located entirely upon the plaintiff's land west of the Langer fence, at which time one of the channels was obstructed by placing rocks and earth therein, and that the water was diverted to defendants' land east of the fence by means of a ditch which was constructed by them. Four witnesses, Archie McDonald, James D. Fairchild, J. W. Churchill and Frank Howell testified to those facts. The first witness mentioned said he moved to that vicinity in 1919, at which time the water from Jack Springs flowed northerly in two natural channels which extended west of the fence. He definitely said no water then flowed east of the fence which divided the property of these litigants, but that, "A channel was dug in there [east of the fence], I would say about 1923". He also testified that even after the construction of the diverting ditch the water would not flow from its original channel until it was first filled up and dammed by rocks and other obstructions. He asserted that the natural channel was obstructed several times

and that he repeatedly removed the rocks and debris after which the water would continue to flow northerly therein upon plaintiff's land. Mr. Fairchild became a resident in that vicinity as early as 1893. He testified that the water from the springs then flowed northerly upon plaintiff's land in natural channels. Mr. Churchill testified that for many years prior to 1926 the water from Jack Springs flowed northerly in natural channels until someone dug a ditch from the east channel to and upon the land of defendants, thereby diverting the water from its natural course. He said "Some one had a dam laid of rocks into the north [the east] channel, and turned the water into this ditch", which caused it to flow easterly beyond the fence to the land of the defendants. He testified that he removed the obstructions from the channel several times, and that he repeatedly filled the artificial ditch.

The testimony of Mr. Zumwalt, upon which the defendants rely, merely results in a conflict of evidence. The defendant, Albert Langer, admitted that he dug the ditch and placed rocks and sod in the east channel. He claimed that the water overflowed the channel at times and spread out upon his land east of the fence, and that his son dug the ditch to drain his land. He testified in that regard:

"It [the water from the springs] went through the fence in here into that low place and it just spread itself every place. . . . Q. And you and your son dug out this so called ditch? A. Yes. . . . Q. Did you put any gates across the canal at that time in 1919? A. I did right away when I had the ditch dug. . . . Q. You are sure those gates weren't constructed in 1929? A. Well, why would I dig a ditch for water and turn that waste water into the canal. Q. Now, why did you dig a ditch across here to take that water, when you already had a ditch going right to the north? . . . A. Because I wanted to get that water on my land. . . . Q. Are you sure you didn't do anything over there besides putting this one flat rock in the north branch about that time? A. Well, once in a while, a fellow put in a sod or something like that. Q. What did you put that in there for? A. *Because I wanted to get all the water I can out of the spring.*"

The evidence sufficiently supports the findings and judgment to the effect that the water from Jack Springs flows in natural channels upon the land of plaintiff; that it was wrongfully and deliberately diverted by the defendants by means of an artificial ditch constructed by them, and by obstructing

the flow of water in its natural channel, to the damage of plaintiff, and that plaintiff is the owner and entitled to the entire flow of water from those springs.

There is little dispute regarding the principles of law with respect to the title to water which flows from springs in natural channels, or the riparian rights incident thereto. The only controversy in this case arises in attempting to apply those principles to the facts adduced by the evidence. ▪ It is true that the owner of land upon which there is located springs, the water from which flows in natural channels across his land and thence upon or through the lands belonging to other indïviduals does not necessarily own the exclusive title to all of the water. On the contrary, under such circumstances the doctrine of riparian water rights is applicable. It follows that if the defendants in this case were the owners of land actually riparian to a natural channel in which the water from plaintiff's springs was accustomed to flow, they might be entitled to a portion of the water from Jack Springs. But the court determined that their land was not riparian to a natural channel connected with those springs, and that they were therefore not entitled to any of the water therefrom. The principle of law which is controlling in this case under the facts determined by the trial court is concisely stated in 25 California Jurisprudence, page 1106, section 113, as follows:

"Irrespective of its source, water from a spring flowing into a watercourse is part of its natural flow and its use is governed by the doctrine of riparian rights. It follows that the owner of land upon which a spring arises and from which a stream flows has no absolute ownership of the waters in the spring, but is entitled only to a reciprocal share, as a riparian owner, in common with other owners farther down on the stream. *But where the natural flow from a spring does not pass beyond the boundary of the land on which it is located, the owner may use all of it; he owns it as completely as he owns the soil.*"

The preceding text is supported by numerous California authorities, including *Stepp* v. *Williams,* 52 Cal. App. 237, 242 [198 Pac. 661], and *Simons* v. *Inyo Cerro Gordo Mining and Power Co.,* 48 Cal. App. 524 [192 Pac. 144].

Title by adverse possession to the water diverted by the defendants from the natural channel and used by them is not involved on this appeal. Prescriptive use of the water was

neither pleaded nor proved by the defendants. ■ Adverse use of water which will mature a prescriptive right thereto must be accompanied by actual, open, notorious control and use; it must be adverse and hostile to the plaintiff's title; it must be under a claim of exclusive right; and it must be continuous and uninterrupted for more than five years. (*Ketcham* v. *Modesto Irr. Dist.*, 135 Cal. App. 180, 191 [26 Pac. (2d) 876]; *Galbreath* v. *Hopkins,* 159 Cal. 297 [113 Pac. 174]; 2 Kinney on Irrigation, 2d ed., p. 1875, sec. 1048; 27 R. C. L., p. 1290, sec. 201; 1 Cal. Jur. 549, secs. 38–41.)

Appellants contend that the topography and elevations appearing on the maps received in evidence refute the possibility of the water from the springs running in natural channels northerly on plaintiff's property. There is no merit in that assertion. Our attention is not called to specific elevations on the map which disprove that fact. It is true that the elevations of the surface of defendants' land east of the springs appear to be lower than the immediate vicinity of the springs. It is also true that the elevations north from the springs on the plaintiff's land west of the fence also decrease. It is not disputed that the water actually flowed northerly in the western channel from the springs. There is an abundance of evidence that it also flowed northerly on plaintiff's land in the easterly natural channel, although the record contains conflicting evidence in that regard. The most that may be said regarding the weight of evidence in that respect is that it is conflicting. The finding of the court in that regard is therefore controlling.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.