227 P.2d 351

**ANDERSON v. WHIPPLE et ux.**

No. 7555.

Supreme Court of Idaho.

Jan. 30, 1951.

Dean Kloepfer, Burley, Lawrence H. Duffin, Rupert, for appellant.

S. T. Lowe, Burley, for respondents.

TAYLOR, Justice.

The plaintiff (appellant), a widow 81 years of age and mother of the defendant R. H. Whipple, commenced this action on the 26th day of February, 1948. In her complaint she alleges that she is and for a long time has been the owner of the Southeast Quarter of the Northeast Quarter of Section Thirty-six, Township Ten South, Range Twenty-four East of the Boise Meridian, in Cassia County, Idaho; that the defendants are in possession of said premises and have been unlawfully withholding the possession from the plaintiff since the 1st day of January, 1946; that the value of the rents and profits of the land is $800.00 per year; that she has been deprived of the rents and profits and further damaged by the withholding of possession in the sum of $500.00; that defendants claim an interest in the property adverse to the plaintiff, which is without right; and that the defendants have not any estate, right, title or interest whatever in said lands. Plaintiff prays that defendants be required to set forth the nature of their claim; that all adverse claims be determined; that it be adjudged that the plaintiff is the owner and entitled to the possession of the premises; that the defendants have no estate nor interest therein; that they be barred from asserting any claim; for restitution of the premises; for the reasonable rental value from January 1, 1946; for $500.00 dam-

ages; "and for such other and further relief as to equity shall seem meet and proper."

The defendants (respondents) are husband and wife. In their answer they admit they hold possession and, as an affirmative defense, allege: That in March, 1934, in order to induce defendants to move upon the land involved and to farm it as her tenants, the plaintiff agreed with them "that she would rent the said premises to the defendants at the customary crop rental, and thereafter she agreed with these defendants that if they would occupy the said premises, farm the same, and pay her a reasonable rental therefor, each year during her natural life, they could occupy the same during her natural life and, upon her death, the real estate would be their real estate."; that pursuant to the agreement they moved upon the premises March 18, 1934, and that they have ever since and now are occupying the premises under and by virtue of that agreement, and have fully complied with the terms and conditions of the contract; that they paid plaintiff a crop rental for the years 1934, 1935 and 1936; that in the year 1937 the plaintiff demanded a cash rental of $400.00; that the defendants acceded to such demand and paid a cash rental of $400.00 for each of the years 1937 to and including the year 1942; that in the year 1943 the plaintiff increased the rent to $500.00 per year and that they paid plaintiff $500.00 for each of the years 1943, 1944 and 1945; that in the year 1946 the plaintiff demanded a cash rental of $700.00, and, although that sum was unreasonable, the defendants paid $700.00 rental for the year 1946; that for the year 1947 the defendants offered plaintiff $700.00 rental, which she refused to accept; that, wholly relying upon the agreement "entered into in the year 1934, as aforesaid," they leveled a portion of the land, thereby increasing the irrigable acreage thereof approximately two acres; that they built a brooder house thereon at a cost of approximately $300.00; constructed a 60 foot straw shed at a cost of approximately $100.00; purchased gas and used the gas on the premises in treating and destroying noxious weeds; constructed an irrigation ditch at an approximate cost of $25.00; removed approximately 20 tree stumps; reset a light pole; painted the kitchen; prepared to plaster and plastered the dwelling house and paid the cost thereof except the compensation of the plasterers; that all of said improvements were made in reliance upon the promise and agreement of plaintiff that they could use and occupy the premises during her lifetime and upon her death the land would become the land of defendants.

It is to be noted that the agreement, alleged to have been entered into in March, 1934, was to rent the premises for a customary crop rental and "thereafter she agreed" to the life tenancy and the fee after her death. Further that the allega-

tion as to improvements is that they were made in reliance upon the agreement "entered into in the year 1934, as aforesaid."

In their cross-complaint the defendants allege that in 1946, 1947 and 1948, they received seven certain checks from the Amalgamated Sugar Company for beets grown on the land, which were made payable to R. H. Whipple and the plaintiff, and that the plaintiff wrongfully, unlawfully, wilfully and maliciously refused to endorse the checks, thus depriving them of the use of the proceeds from the date of issuance to the 6th day of April, 1948, to their damage in the sum of $62.94. They pray judgment for such damage and for $1000.00 punitive damages.

In answer to the cross-complaint the plaintiff alleges that the lease agreed to in 1934 was a lease for "one crop year.", and that each year since 1934 up to and including 1945, the parties negotiated a new lease; that they were unable to agree on the terms of the lease for the year 1946, and that plaintiff has not accepted rental from the defendants since the 1st of January, 1946.

The defendants filed a written motion for an order directing that the cause be tried to a jury, on the ground that the pleadings show upon their face that it is an action at law and not a suit in equity. After argument, this motion was granted by the court. The cause was thereafter tried and submitted to a jury, for a general verdict as to who is entitled to possession; and three special verdicts, the first of which asked the jury to fix the reasonable rental value, the second as to whether or not the defendants were damaged by plaintiff's refusal to endorse the beet checks and, if so, the amount, and the third as to whether or not the defendants are entitled to punitive damages and, if so, the amount. In thus submitting the cause the court observed that it regarded the special verdicts as "binding on the court, and not merely interrogatories to be accepted which are only advisory to the court in an equity case, the court having already decided that the defendants are entitled to a jury trial with a resulting verdict binding upon the court."

By the so-called general verdict the jury found that the defendants are entitled to possession. By the special verdicts the rental value for each of the years 1946, 1947 and 1948, was fixed at $700.00; the damage for refusal to endorse checks, $62.94; and punitive damages were awarded in the sum of $533.33. Plaintiff's motion for judgment notwithstanding the verdict was denied. In the judgment which followed, the general and special verdicts were incorporated, but no other findings were made by the court. It was adjudged that the defendants were entitled to the possession of the land during the natural life of the plaintiff upon payment to her "of a reasonable cash rent for the use and occupation of said premises during each year of the natural life of the said plaintiff

and cross-defendant; that if the defendants and cross-complainants shall well and truly, each year, pay to the plaintiff and cross-defendant, Melissa Anderson, during her natural life, a reasonable cash rent, then at the death of said Melissa Anderson the above described real estate shall be and become the property of the defendants and cross-complainants, R. H. Whipple and Effie Whipple, his wife." The reasonable rental value for the years 1946, 1947 and 1948, was fixed at $700.00 per year and judgment was entered for the defendants for $62.94 actual damages and $533.33 punitive damages and costs, to be offset against the rentals due to the plaintiff. $2,100.00 having been tendered and paid to the clerk by the defendants to cover the rental for the three years, the judgment directed the clerk to deduct defendants' damages and costs from this amount and pay the balance to the plaintiff.

The first question presented is the right to trial by jury.

"The right of trial by jury shall remain inviolate; * * *." Const. Art. 1, sec. 7.

"The distinctions between actions at law and suits in equity, and the forms of all such actions and suits, are hereby prohibited; and there shall be in this state but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which shall be denominated a civil action; * * *." Const. Art. 5, sec. 1.

" * * * the fact at issue shall be tried by order of court before a jury." Const. Art. 5, sec. 1.

These provisions were not intended to and do not extend the right of trial by jury to suits in equity. Their function is to preserve the right as it existed at the date of the adoption of the constitution. Christensen v. Hollingsworth, 6 Idaho 87, 53 P. 211, 96 Am.St.Rep. 256; Shields v. Johnson, 10 Idaho 476, 79 P. 391, 3 Ann.Cas. 245; Morton v. Morton Realty Co., 41 Idaho 729, 241 P. 1014; Johnson v. Niichels, 48 Idaho 654, 284 P. 840; Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080.

The district court has "original jurisdiction in all cases, both at law and in equity, * * *". Const. Art. 5, sec. 20.

"There is in this state but one form of civil actions for the enforcement or protection of private rights and redress or prevention of private wrongs: provided, that in all matters not regulated by this code, in which there is any conflict or variance between the rules of equity jurisprudence and the rules of the common law, with reference to the same matter, the rules of equity shall prevail." Sec. 5–101, I.C.

These and other code provisions were intended to simplify pleading and procedure, and to eliminate outmoded common law forms and technicalities which often frustrated the administration of justice. Under our system, legal and equitable rights may

be pleaded, and relief at law and in equity may be granted, in the same action. Addy v. Stewart, 69 Idaho 357, 207 P.2d 498, and cases there cited; 1 Pomeroy's Equity Jurisprudence, Fifth Ed., sec. 242; Wa Ching v. Constantine, 1 Idaho 266.

Originally equity's jurisdiction to quiet title was strictly limited, but was greatly extended by statute in most of the states when the "reformed" or code procedure was adopted. Some, however, still limit the action to cases where the plaintiff is in possession. But others, including Idaho, extend the jurisdiction to all suits involving conflicting claims to an estate or interest in real property whether the plaintiff be in or out of possession. Pomeroy's Code Remedies, Fifth Ed., sec. 266; 4 Pomeroy's Equity Jurisprudence, Fifth Ed., sec. 1396.

Some of the decisions cited and relied upon by respondent are from Kansas and Oklahoma where the statute limits the action to cases where the plaintiff is in possession. Our statute is as follows: "An action may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim." Sec. 6-401, I.C. Except for the addition of the words, "or personal" by amendment in 1937, this statute is the same now as it was when first adopted by the territorial legislature in 1881. Hence, at the time of the adoption of the constitution (1890) equity jurisdiction extended to all suits to quiet title to real property, and no right to trial by jury existed in such cases. Christensen v. Hollingsworth, 6 Idaho 87, 53 P. 211, 96 Am.St.Rep. 256; Shields v. Johnson, 10 Idaho 476, 79 P. 391, 3 Ann.Cas. 245; Morton v. Morton Realty Co., 41 Idaho 729, 241 P. 1014; Johnson v. Niichels, 48 Idaho 654, 284 P. 840; Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080. Respondents rely upon sec. 10-105 I.C., which provides that: "In actions for the recovery of specific real or personal property, with or without damages, * * * an issue of fact must be tried by a jury, unless a jury trial is waived, * * *" This statute was also a part of the original code of civil procedure of 1881. However, its provisions do not extend to suits in equity. Brady v. Yost, 6 Idaho 273, 55 P. 542; Cleland v. McLaurin, 40 Idaho 371, 232 P. 571. The words, "actions for the recovery of specific real * * * property" must therefore be held to refer to actions other than to quiet title, such as ejectment, or other actions where the right to possession is the paramount issue. Such actions have always been regarded as within the province of the courts of law. Hulsebus v. McConnell, 46 Ariz. 371, 51 P.2d 259; 28 C.J.S., Ejectment, §§ 1, 2, 3 and 4; 18 Am. Jur., Ejectment, secs. 2 and 3; Burke v. McDonald, 2 Idaho 339, 13 P. 351; Oliver v. Burg, 154 Or. 1, 58 P.2d 245; Farmers State Bank v. Lanning, 162 Kan. 95, 174 P. 2d 69. Hence, the defendants' right to trial by jury depends upon whether this is an action for possession under sec. 10-105, I.C.,

or an action to quiet title under sec. 6–401, I.C. This question must be determined from a consideration of all of the pleadings in the case, and of the ultimate and entire relief sought. Johansen v. Looney, 30 Idaho 123, 163 P. 303; Rees v. Gorham, 30 Idaho 207, 164 P. 88; Reddy v. Graham, 110 Kan. 753, 205 P. 362; Crocker v. Carpenter, 98 Cal. 418, 33 P. 271; Mathews v. Sniggs, 75 Okl. 108, 182 P. 703; Card v. Deans, 84 Neb. 4, 120 N.W. 440; O'Day v. Conn, 131 Mo. 321, 32 S.W. 1109; Howard v. Stanolind Oil & Gas Co., 197 Okl. 269, 169 P.2d 737; Norback v. Board of Directors, 84 Utah 506, 37 P.2d 339.

In protecting the right to trial by jury the courts will not permit a party, seeking only relief at law to plead his cause in form equitable in order to deprive his opponent of that right. Foresman v. Foresman, 103 Kan. 698, 176 P. 147, 175 P. 985. Where, however, the plaintiff, in good faith, pleads his cause in equity, seeking relief which only that court can grant, he will not be remanded to an action at law. Crouser v. Boice, 51 Cal.App.2d 198, 124 P. 2d 358; Allen v. Jones, 188 Okl. 546, 110 P. 2d 911; Gillette v. Oberholtzer, 45 Idaho 571, 264 P. 229.

Here the plaintiff has pleaded her cause in equity to quiet title. As to her good faith, it appears from the record that a dispute, dating back to 1937, has existed between these parties as to whether or not the contract alleged in defendants' answer was in fact made. As shown by the answer, defendants' claim adversely affects plaintiff's title. One action between them was dismissed inconclusively before this action was commenced. It therefore appears that plaintiff is seeking not alone to oust defendants, but to quiet her title against their adverse claims. Further, the defendants' answer contains allegations which in effect tend to establish a right in them to the relief of specific performance of an oral contract for a lease of the property for the life of the lessor, and title thereto in fee upon her death. It is true that the defendants do not pray for affirmative relief to that effect and that their pleading is in form defensive only. However, the effect is the same. They appeal to equity to defeat the plaintiff. We adhere to the rule that "Equity having obtained jurisdiction of subject matter of a dispute, will retain it for the settlement of all controversy between the parties with respect thereto." Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080, 1083, and cases there cited. It is also the rule in this state (except in default cases) that the court will grant all proper relief consistent with the case made and embraced within the issues, whether the particular relief be prayed for or not. Sec. 10–704, I.C.; Burke Land & Livestock Co. v. Wells Fargo & Co., 7 Idaho 42–56, 60 P. 87; Dover Lbr. Co. v. Case, 31 Idaho 276, 170 P. 108; Schlieff v. Bistline, 52 Idaho 353, 15 P.2d 726; Swanstrom v. Bell, 67 Idaho 554, 186 P.2d 876; Stivers v. Sidney Mining Co., 69 Idaho 403, 208 P.2d 795.

In this case, although the defendants' prayer did not seek such relief, the court gave them judgment specifically enforcing the alleged oral contract. We conclude that the case made by plaintiff's complaint and defendants' answer thereto invoked the equity jurisdiction of the court, and that the defendants were not entitled to a jury trial as a matter of right. Fairview Inv. Co. v. Lamberson, 25 Idaho 72, 136 P. 606; Farrell v. Ontario, 39 Cal.App. 351, 178 P. 740; Thomson v. Thomson, 7 Cal.2d 671, 62 P.2d 358, 117 A.L.R. 1; Lawrence Bldg. & Loan Ass'n v. Taylor, 148 Kan. 331, 81 P.2d 15; Funk v. First Nat. Bank, 185 Okl. 604, 95 P.2d 589; Pickle v. Martin, 188 Okl. 689, 112 P.2d 1081; Quintana v. Vigil, 46 N.M. 200, 125 P.2d 711; Thomas v. Mettel, 41 S.D. 322, 168 N.W. 651; Krumm v. Pillard, 104 Neb. 335, 177 N.W. 171; Anno. 117 A.L.R. 9; 44 Am.Jur., Quieting Title, sec. 89; 51 C.J., Quieting Title, secs. 7, 9.

Nor does the fact that defendants plead a cross-complaint for damages at law affect this conclusion. Fogelstrom v. Murphy, 70 Idaho 488, 222 P.2d 1080. On the contrary, if their theory were correct that this is a possessory action only, then it would seem their cross-complaint should have been stricken. Fry v. Weyen, 58 Idaho 181, 70 P.2d 359.

The trial court therefore erred in holding that defendants were entitled to a jury trial as a matter of right and that the verdicts were binding on the court.

The verdicts were only advisory. The court was at liberty to adopt or reject them, in whole or in part. In either event, it was incumbent upon the court to make findings on all material issues. Cheesbrough v. Jensen, 62 Idaho 255, 109 P.2d 889; Annotations 156 A.L.R. 1150, 1171, 1187, 1193, 1195; secs. 10–302, 10–303, I.C. In this case no findings were made at all, except such as inhere in the verdicts themselves. There was no waiver. Appellant objected to a jury trial, and to a general verdict, and requested answers to 19 interrogatories, which were refused. Penninger Lateral Co. v. Clark, 22 Idaho 397, 126 P. 524.

The law requires as a condition to specific performance that the contract be proved by clear and convincing evidence. Soho v. Wimbrough, 145 Md. 498, 125 A. 767; 49 Am.Jur.Statute of Frauds, sec. 622; Sprague v. Jessup, 48 Or. 211, 84 P. 802, 83 P. 145, 4 L.R.A.,N.S., 410; Prairie Dev. Co. v. Leiberg, 15 Idaho 379, 98 P. 616; Barker v. McKellar, 50 Idaho 226, 294 P. 196; Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769.

Further, the contract must be "complete, definite and certain in all its material terms, or contains provisions which are capable in themselves of being reduced to certainty. Sherman v. Watson, 58 Idaho 451, 74 P.2d 181; Nolan v. Grim, 67 Idaho 138, 173 P.2d 74." Locklear v. Tucker, 69 Idaho 84, 203 P.2d 380, 384, 49 L.R.A.,N.S., 116 note; Phelps v. Good, 15 Idaho 76, 96 P. 216; Thompson v. Burns,

15 Idaho 572, 99 P. 111; Armstrong v. Henderson, 16 Idaho 566, 102 P. 361; Zaring v. Lavatta, 36 Idaho 459, 211 P. 557; Fry v. Weyen, 58 Idaho 181, 70 P.2d 359; Annotation 69 A.L.R. 120; Sherman v. Watson, 58 Idaho 451, 74 P.2d 181; Hancock v. Elkington, 67 Idaho 542, 186 P.2d 494; Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769.

A greater degree of certainty is required to sustain a decree for specific performance than is required to sustain a judgment for damages at law. Store Properties v. Neal, 72 Cal.App.2d 112, 164 P.2d 38; Avalon Productions v. Lentini, Cal. App., 219 P.2d 485. In this case the jurors were not instructed that the contract alleged in defendants' answer must be established by clear and convincing evidence. On the contrary they were instructed that affirmative defense need only be established "by a fair preponderance of the evidence." The application of this rule requiring clear and convincing proof is primarily for the trial court. Bedal v. Johnson, 37 Idaho 359, 218 P. 641. But, the court having ruled that it was bound by the verdict, and having entered judgment upon the general verdict returned pursuant to such instruction, it would appear that the rule was denied application. The same may be said of the requirement that the proof establish a contract which is complete, definite and certain in all material terms. The jury was not advised of this rule and the record would indicate that it was not applied.

As to certainty, it appears from the answer that the date of the contract was not definite. As hereinbefore pointed out, it is alleged that the plaintiff agreed to rent to the defendants for a crop rental in March, 1934, "and thereafter she agreed" to the life tenancy and title to the realty upon her death. There were numerous conversations related in the testimony. From these it appears that a lease upon a crop rental basis was all that was agreed to originally, and that the proportion of the crop to be delivered as rent was left to future determination after inquiry in the vicinity as to what was customary. Thereafter, the parties apparently determined what the crop rental should be, because such a rental was paid for the years 1934, 1935 and 1936. The "customary crop rental" was changed to "reasonable rental" in the year 1937, when the plaintiff demanded a cash rental. "Reasonable rental" cannot be considered as a definite or certain term or condition of a contract of lease, and in this case the record is to the effect that the parties did not regard it as such. The crop rental was abandoned in 1937 for a cash rental of $400.00. The cash rental was increased to $500.00 in 1943 by agreement of the parties, and to $700.00 in 1946 by the finding of the jury. The parties treated the contract in this respect as subject to change from year to year. The price, consideration, or rental, and the terms of payment, are among those material terms which are required in a complete, definite and certain contract. 4 Pomeroy's

Equity Jurisprudence, sec. 1404; Driebe v. Fort Penn Realty Co., 331 Pa. 314, 200 A. 62, 117 A.L.R. 1091, annotation at page 1095; Monahan v. Allen, 47 Mont. 75, 130 P. 768; Kofoed v. Bray, 69 Mont. 78, 220 P. 532; Gaskill v. Jacobs, 38 Idaho 795, 225 P. 499; Annotation 49 A.L.R. 1464.

An agreement, which leaves any of the material terms or conditions for future determination, cannot be enforced. Annotation 49 A.L.R. 1464; Monahan v. Allen, 47 Mont. 75, 130 P. 768; Store Properties v. Neal, 72 Cal.App.2d 112, 164 P.2d 38; Avalon Products v. Lentini, Cal.App., 219 P.2d 485; Brothers v. Arave, 67 Idaho 171, 174 P.2d 202.

Equity will not enter a decree for specific performance the enforcement of which is not practicable or feasible. These parties have had many disagreements as to what the rent should be and since 1946 have been entirely unable to reach any agreement at all. Under such circumstances, to enforce the decree entered, the court must, necessarily, either retain jurisdiction for the purpose of determining the reasonable rental each year during the life of the plaintiff, or the parties would be required to have the rental determined by jury each year, so long as they remain unable to agree. Such a result is abhorrent to equity. 49 Am.Jur., Specific Performance, secs. 70 and 72. It would impose upon the plaintiff a contract which she refuses to enter into voluntarily. Machold v. Farnan, 14 Idaho 258, 94 P. 170. Further as to this aspect of the case, the contract lacks the necessary mutuality of remedy. It is apparent that the part that remains executory on the part of the defendants, that is, the occupation of the premises, and the diligent, faithful, husbandlike farming thereof by the defendants in the years to come, cannot be enforced. Nunn v. Boal, 29 Ohio App. 141, 162 N.E. 724; Moody v. Crane, 34 Idaho 103, 199 P. 652; Childs v. Reed, 34 Idaho 450, 202 P. 685; Zaring v. Lavatta, 36 Idaho 459, 211 P. 557; Sherman v. Watson, 58 Idaho 451, 74 P.2d 181.

A further requisite for specific performance is an adequate consideration. Bear Track Mining Co. v. Clark, 6 Idaho 196, 54 P. 1007; Howes v. Barmon, 11 Idaho 64, 81 P. 48, 69 L.R.A. 568, 114 Am. St.Rep. 255; McReynolds v. Harrigfeld, 26 Idaho 26, 140 P. 1096; Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769. The want of such consideration is a matter of defense. Locklear v. Tucker, 69 Idaho 84, 203 P.2d 380. The contract here urged, being set up in the answer as a defense, under our rules of pleading, is deemed denied. Hence, a finding that the agreement is supported by an adequate consideration is essential to sustain the judgment. The rental to be paid from year to year satisfies the requirement of consideration for the use of the land from year to year. But, there is nothing in the record to sustain a finding of any other or further consideration flowing from the defendants to the plaintiff for such occupancy. This leaves the alleged agreement

on the part of the plaintiff to transfer the property to the defendants upon her death wholly without any consideration whatever. Wood v. Thornly, 58 Ill. 464; Bear Track Mining Co. v. Clark, supra; Johnson v. Flatness, supra. The defendants have not alleged a gift inter vivos and the evidence does not sustain the judgment on that theory. Zimmerman v. Fawkes, 70 Idaho 389, 219 P.2d 951.

■■■ Although not specifically urged by defendants, if their effort is to support the judgment on the theory of a promise to make a gift by will, they fail in that also. Except for consideration, such an agreement must measure up to the other requirements of a parole contract to sell. Its existence as well as its material terms must be established by clear and convincing evidence, and it must be complete, definite and certain. Reinhardt v. Fleming, 18 Wash.2d 637, 140 P.2d 504, 155 A.L.R. 73, annotation p. 76. If we take the testimony of the defendants themselves, at its face value, and without diminution in weight by the contrary testimony of the plaintiff and her witness, the element of certainty and the degree of proof required, are not found. Referring to the first discussion of the proposed lease, the defendant R. H. Whipple, under direct examination, said, "There was something said about that I could have the place indefinitely." He testified that later, after he had moved onto the property, the plaintiff said to him, "I have property and money enough to make it equal with the other boys and they do not need the land. All I expect is for you to pay me a reasonable rent as long as I live, and I told her I expected to do that." And, that the place was in bad shape and that she expected him to do the work necessary to fix it up and that he told her, "I said that I didn't expect to do all of that work and then be kicked off." And that she replied, "that she wouldn't be apt to kick me off as long as I was doing the right thing by her." On cross-examination he testified that the plaintiff said, "All I expect you to do is pay me a reasonable rent as long as I live and the place will be yours."

The defendant Mrs. Whipple on direct examination testified, "and she said as near as I could tell, as long as he treated her right he would be able to stay as long as— and he wouldn't have come under any other conditions," and "someday this place will be yours and all I ask of you is to pay me a reasonable rent as long as I live and I have enough property and money I will make up to the other boys because they both have land enough and you're as much entitled to it as anyone else." And, on cross-examination, "He said he would, if he could come up there and be on it and not have anyone else interfere. Q. What else? A. And she said she wouldn't be apt to as long as he treated her right." And she again repeated the additional statement made by her on direct examination as above quoted.

This evidence not only fails to support a complete, certain and definite contract, but, on the contrary, establishes that no agreement to transfer the property to the defendants upon plaintiff's death was entered into. The conveyance and even the continuation of the tenancy were conditioned upon, (1) the payment of a "reasonable rent" during the life of the promisor, and (2) upon her determination that the defendants had treated her right. Thus, the promise to continue the tenancy, and to leave the land to the defendants, were both dependent upon the future performance of conditions which are not only uncertain in meaning, but are of such a nature that a court of equity could not enforce their observance by the defendants. And certainly equity would not relieve defendants from the obligation to perform. Moreover, defendants' testimony negatives the idea of a gift. They both testified that in 1946 they tried to buy the property from the plaintiff and offered her $5000.00 for it, which she refused.

Another underlying principle, applicable where the contract does not comply with the statute of frauds, is that equity will not enforce it except in cases where a refusal to do so would be inequitable. Conversely, where a party has so performed, or changed his position in reliance on the contract, that to allow the other party to interpose the statute of frauds as a defense, would perpetrate a fraud on the performing party, and the legal remedy is inadequate, equity will decree specific performance. Soho v. Wimbrough, 145 Md. 498, 125 A. 767; 49 Am.Jur.; Statute of Frauds, secs. 421, 422, 423, and 427; Annotation 75 A.L.R. 650; Annotation 117 A.L.R. 939; Morrison v. Herrick, 130 Ill. 631, 22 N.E. 537; Holsz v. Stephen, 362 Ill. 527, 200 N.E. 601, 106 A.L.R. 737; Annotation 106 A.L.R. 756; Deeds v. Stephens, 8 Idaho 514, 69 P. 534; Howes v. Barmon, 11 Idaho 64, 81 P. 48, 69 L.R.A. 568; Havlick v. Davidson, 15 Idaho 787, 100 P. 91; Annotation 65 A.L.R. 7-110; Wolf v. Eagleson, 29 Idaho 177, 157 P. 1122; Eagle Rock Corp. v. Idamont Hotel Co., 59 Idaho 413, 85 P.2d 242; Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769; Anselmo v. Beardmore, 70 Idaho 392, 219 P.2d 946. The improvements made by defendants, and on which they rely for part performance, are not substantial in relation to the value of the property, and are not more than good husbandry would require. Dabanian v. Rothman, 291 Mich. 31, 288 N.W. 324, 125 A.L.R. 1465; Wood v. Thornly, 58 Ill. 464; Lechenger v. Merchants' Nat. Bank, Tex. Civ.App., 96 S.W. 638; Ryan v. Lofton, Tex.Civ.App., 190 S.W. 752; Falk v. Devendorf, 172 Wis. 10, 177 N.W. 894. Respondent R. H. Whipple, in his testimony, readily fixed the money value of these improvements. From this it appears that had there been any for which he should have recovered damages, that remedy would have been adequate. Wolfe v. Wallingford Bank & Trust Co., 124 Conn. 507, 1 A.2d 146, 117 A.L.R. 932; Bowman v. Adams, 45 Idaho 217, 261 P. 679; Barker v. McKellar, 50 Idaho 226, 296 P. 196.

Further as to these improvements, defendant R. H. Whipple testified; that in 1937 his mother, the plaintiff, denied that she had promised him the place if he paid her a reasonable rent during her lifetime; and that the brooder house was built, most of the land leveling, the stump removal, and the change in the ditch, were done, after the plaintiff had denied, or repudiated the alleged agreement. Of course improvements made after the denial of the existence of the contract could not have been made in reliance upon it, and would furnish no basis for either specific performance or damages. Wood v. Thornly, 58 Ill. 464; Fry v. Weyen, 58 Idaho 181, 70 P.2d 359. The plaintiff does not claim the brooder house.

There is no evidence to sustain the award of punitive damages. Unfried v. Libert, 20 Idaho 708, 119 P. 885; Gunnell v. Largilliere Co., 46 Idaho 551, 269 P. 412; Klam v. Koppel, 63 Idaho 171, 118 P.2d 729.

The judgment is reversed and the cause is remanded with directions to the district court to enter judgment, in favor of the plaintiff for possession, and quieting her title; and allowing the defendants the brooder house, and $62.94 interest on the proceeds of the checks during the time plaintiff withheld her endorsement thereof.

Costs to appellant.

GIVENS, C. J., KEETON, J., and WINSTEAD and McDOUGALL, District Judges, concur.