[Civ. No. 9119.   Third Dist.   Oct. 4, 1957.]

ALVA E. YORK et al., Appellants, v. MYRON J. HORN et al., Respondents.

Daniel L. Jensen for Appellants.

Crossland, Crossland & Richardson and Baxter K. Richardson for Respondents.

WARNE, J. pro tem.*—This case concerns a boundary dispute. Plaintiffs and appellants, the Yorks, sought to quiet title to certain lands which they alleged a survey showed to be theirs. The court quieted title in the defendants, the respondents, and this appeal followed. Appellants' land lies north of, and adjacent to, the land of the respondents. A fence separates the property. In September of 1952, the appellants had the land surveyed and a result of the survey disclosed that the fence which separated the two parcels of property was located some 34 feet north of the true line and that a spring which was being used by the respondents was on the appellants' land. Appellants then moved the fence to the survey line, and within a week or so respondents moved it back.

A Mr. Reiger, one of the Horns' predecessors in interest, testified that the fence was there when he bought the land in

*Assigned by Chairman of Judicial Council.

1946. A Mrs. Smith, whose husband purchased the property now owned by the Horns in 1927, testified that when her husband purchased the property in 1927 there was an old fence along the north side of the property; that he put in a new fence at that time along the line of the original fence; that the spring was at that time just a hole in the ground; that a survey was made at that time which disclosed that the fence was on the property line and that her husband then cemented up the spring, built a tank at the house and piped water from the spring to the house.

There was also evidence that there was a fence between at least a part of the property as early as the year 1900.

The court found, among other things, that prior to 1900 a substantial fence was erected at or near the boundary line; that the fence had been located and maintained in the same location ever since; that an implied agreement was formerly made as to the boundary line which plaintiffs ought not be allowed to deny, and that defendants have a prescriptive right to appropriate all the waters from the spring by reason of the appropriation of the waters since 1927.

Appellants contend on this appeal that they established that the fence was not the true boundary; that the respondents failed to prove any agreed boundary; that the respondents did not acquire title by adverse possession; that the respondents could not acquire appropriative rights in the spring water without a permit; and that respondents failed to prove an adverse use of the water. We are of the opinion that there is substantial evidence to uphold the decision or the finding of agreed boundary.

In *Roberts* v. *Brae*, 5 Cal.2d 356, the court said, at pages 358, 359 [54 P.2d 698]:

". . . [I]n order to establish an agreed boundary line it is necessary to show that there was an uncertainty or belief of uncertainty in the location of the line, that there was an agreement, express or implied, fixing the line, and that there was an actual designation of the line upon the ground and occupation in accordance therewith. . . .

"However, in considering the nature and character of proof required to show such uncertainty and to establish such an. agreement, the authorities are equally clear that in the absence of direct evidence, the same may be deduced from circumstances and may be inferred from the conduct of the parties, particularly from long acquiescence. . . . 'It is not necessary that the agreement between the parties be an express

one. It may be inferred or implied from their conduct, especially where the condition is acquiesced in for the period of the statute of limitations . . . ██ "A presumption that an agreement formerly was made as to the location of a boundary line may arise from the fact that one or both the adjoining owners have definitely defined such line by erecting a fence or other monument on it and that both have treated the same as fixing the boundary between them for such length of time that neither ought to be allowed to deny the correctness of its location." ' "

The rule that courts may infer that there was such an agreement ensuing from uncertainty or a dispute, from the long-standing acceptance of the fence as a boundary between the land of owners, was reaffirmed in *Hannah* v. *Pogue*, 23 Cal.2d 849, 856 [147 P.2d 572].

The courts of this state have also recognized such boundaries because the early surveys were most uncertain, and in later years the monuments and boundaries could not be found. (*Hannah* v. *Pogue, supra.*) In the instant case the survey was not made from the original government monuments. The surveyor testified that the survey was run from certain iron pipes or monuments at the south and north ends of the line; that the early government markers or monuments were gone and he did not know who installed the iron pipes that he used in making the survey. He also testified that errors occurred in original government surveys up to 200 feet in a mile.

██ The fact that an accurate survey is possible is not conclusive of the question of whether a doubt exists as to the location of the boundary. ██ The doubt may arise from the believed uncertainty which may be inferred from the circumstances surrounding the parties at the time the agreement is deemed to have been made, and if in good faith the parties resolve their doubt by fixing the location of the common boundary, it will be considered the boundary called for in the deed. (*Mello* v. *Weaver*, 36 Cal.2d 456, 460 [224 P.2d 691]; *Madera School Dist.* v. *Maggiorini*, 146 Cal.App.2d 390 [303 P.2d 803].) In *Martin* v. *Lopes*, 28 Cal.2d 618 [170 P.2d 881], the statement is made that in order to invoke the doctrine of agreed boundaries all that need be shown is lack of knowledge by both parties where the fence line should be drawn.

██ The trial court's finding that in view of the fact that the fence was erected and maintained as a boundary since 1900 an implied agreement was formerly made as to the loca-

tion of said boundary line, and that neither the plaintiffs nor the defendants should be allowed to deny that the line on which the fence was originally maintained and established is the true boundary line between the property, is sustained by the evidence. There was evidence that a fence existed as early as 1900 and, at any rate, prior to 1927; the spring was improved in 1927. Prior to the Yorks' survey, no one apparently disputed the fence as the boundary. Certainly such long acquiescence permits the inference that there was an agreement as to the boundary. The fact that an accurate survey may have been possible is not necessarily conclusive since if the adjoining landowners were uncertain as to the line, the doctrine of agreed boundary is properly applicable. The fact of long acquiescence in the location of the fence is sufficient to establish the boundary line by agreement.

Appellants' claim that the trial court erred in granting all the waters in the spring to the respondents as against the appellants is also without merit. The trial court found that the respondents were entitled to appropriate all the waters from the spring in unlimited quantities by virtue of their appropriation since 1927.

Appellants' contention is that there was no allegation, evidence, or finding that the respondents or their predecessors ever complied with the provisions of the Water Code as to the appropriation of water or that they ever obtained a permit of any kind for appropriation of water, and, therefore, the findings and judgment are erroneous. Appellants may not complain. The spring was found to be on the respondents' property. A natural flow from the spring was not shown to pass on the surface beyond the lands of the respondents and there was no evidence that the water percolating was part of a water course. Without such evidence the respondents, as landowners, were entitled to the use of all the water from the spring. (Hutchins, The California Law of Water Rights, page 408; *San Francisco Bank* v. *Langer*, 43 Cal.App.2d 263, 268 [110 P.2d 687].) It is only public water which requires a permit before it may be appropriated. Water Code, section 1201, reads in part: "All water flowing in any natural channel . . . is hereby declared to be public water of the State and subject to appropriation. . . ."

No other points require discussion.

The judgment is affirmed.

Peek, Acting P. J., and Schottky, J., concurred.