719 P.2d 1125

**Russell B. DUFF and Susana M. Duff, husband and wife, Plaintiffs, Counter-Defendants, Respondents,**

v.

**Raymond SEUBERT and Regina Mary (Jeanne) Seubert, Defendants, Counter-Plaintiffs, Appellants.**

No. 15032.

Supreme Court of Idaho.

July 10, 1985.

On Rehearing June 3, 1986.

William B. Taylor, Grangeville, for defendants, counter-plaintiffs, appellants.

Charles A. Brown of Aherin, Rice & Brown, Lewiston, for plaintiffs, counter-defendants, respondents.

BAKES, Justice.

The Duffs brought this action against the Seuberts to quiet title to certain real property in Idaho County. At trial, the district court granted the Duffs' motion for a directed verdict, quieting title in their names. We reverse.

On May 4, 1970, the Seuberts negotiated for and acquired a tract of land from Heckman Ranches, Inc. The land in dispute is a part of that tract. Another party, the Woodses, provided the money for the purchase. The testimony reflects that the Seuberts were purchasing the property for the Woodses, and that the Seuberts were to receive a portion of the property for handling the transaction. Although the warranty deed received from Heckman Ranches, Inc., listed only the Seuberts as grantees, about one month later a warranty deed was executed by the Seuberts and the Woodses, transferring most of the property to the Woodses.

Prior to execution of this warranty deed, Ray Seubert and Earl Woods, Jr., agent for all the Woodses, orally agreed as to the boundary of the property which the Seuberts were to retain. The parties basically agreed to a division of the flat portion of the land. Although the property had not been surveyed, the two assumed that the north boundary of the land was marked by a large tree with wire on it and by some fence posts. Stepping off 85 feet south from the tree, the two identified a bush as the south boundary of the flat portion of land that Seubert was to retain. The warranty deed was drafted containing a metes and bounds description which the parties felt to be in conformance with their agreement.

In the spring of 1972, the Seuberts moved a mobile home on to the land reserved to them in the oral agreement with the Woodses. The Seuberts' mobile home was placed on a cement block foundation and has remained on the land since that time.

In February of 1974, Russell Duff contacted the Woodses about purchasing the Woodses' portion of the property. Although contested by Duff, Earl Woods, Jr., testified at trial that Duff asked about the mobile home prior to purchasing the Woodses' property. According to Woods' testimony, Duff was told at that time that the mobile home and the property upon which it was located did not belong to the Woodses and thus would not be part of the sale.

On April 1, 1974, the Woodses' property was transferred to the Duffs by warranty deed. This warranty deed contained the same legal description of the property as was contained in the deed the Woodses had received from the Seuberts. The property had not yet been surveyed.

The record reflects that in March of 1974 Ray Seubert contacted Russell Duff, suggesting, "It would be a good idea for all concerned if we would pinpoint the location of the start of my 85-foot frontage, which Jack Woods and I agreed on possibly with an iron pipe driven into the ground." In response, Duff suggested that a licensed surveyor determine the property lines. In 1975 the survey was conducted. According to this survey, which relied on the legal description contained in the Duffs' warranty deed, the Seuberts' mobile home was partially located on the Duffs' property.

In June of 1977, the Duffs moved a small trailer house on to their property. In August of 1977, this trailer house was moved into close proximity to the front door of the Seuberts' mobile home, on to land which the survey indicated belonged to the Duffs pursuant to the warranty deed.

Eventually, on March 29, 1979, the Duffs filed a complaint, seeking to quiet title to the disputed property. The complaint alleged that the Seuberts' mobile home was parked on property belonging to the Duffs, as per the legal description on the Duffs' warranty deed. The Seuberts answered and counterclaimed, seeking to quiet title and alleging that the location of the Duffs' small trailer in such close proximity to the door of their mobile home had caused the Seuberts severe emotional distress and loss of enjoyment of their property. The Duffs then filed a motion for a more definite statement and a motion for dismissal of the Seuberts' counterclaims and defenses. The motion for a more definite statement was granted. Following submission of the Seuberts' amended answer and counterclaim, the motion to dismiss the counterclaim was denied.

Trial began on December 6, 1982, before a six-person jury. After presentation of the Duffs' and the Seuberts' cases in chief, the Duffs moved for a directed verdict. The Duffs' motion for directed verdict was granted on the issues of adverse possession, boundary by agreement, and intentional interference with enjoyment of property. Following the rebuttal portion of the Duffs' case, the court directed a verdict in favor of the Duffs, quieting title in their name. At that time, the Seuberts' counterclaim alleging intentional infliction of emotional distress was dismissed. Thereafter, the findings of fact and conclusions of law were prepared by the court and judgment entered. The Duffs were awarded $5,000 in legal fees on the basis that "the defendants defended the quiet title action frivolously, unreasonably and without foundation." The Seuberts' motion for a new trial was denied, and this appeal followed. We reverse for the reasons set forth below.

■ The Seuberts argue that the trial court erred in not submitting this case to the jury. An action to quiet title invokes the equity jurisdiction of the court. *Howard v. Bar Bell Land & Cattle Co.*, 81 Idaho 189, 196, 340 P.2d 103, 107 (1959); *Anderson v. Whipple*, 71 Idaho 112, 227 P.2d 351 (1951). Thus, a party does not have a right to trial by jury in a quiet title action. *Anderson v. Whipple, supra.* "[E]quity having obtained jurisdiction of the subject matter of a dispute, will retain it for the settlement of all controversies between the parties...." *Carpenter v. Double R Cattle Co., Inc.*, 108 Idaho 602, 701 P.2d 222 (1985) (*quoting Boesiger v. Freer*, 85 Idaho 551, 563, 381 P.2d 802, 809 (1963)). Thus, even as to the legal issues, the jury was merely advisory in this case. Accordingly, we find no merit in the Seuberts' contention that this case should have been submitted to the jury. *See Carpenter v. Double R Cattle Co., supra.*

■ However, we do agree with the Seuberts that the trial court erred in refusing to apply the doctrine of agreed boundary to this case. Idaho has long recognized the doctrine of agreed boundary. The doctrine provides:

"Where the location of a true boundary line between coterminous owners is known to either of the parties, or is not uncertain, and is not in dispute, an oral agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in violation of the statute of frauds ... and is invalid. But, where the location of the true boundary line is unknown to either of the parties, and is uncertain or in dispute, such coterminous owners may orally agree upon a boundary line. When such an agreement is executed and actual possession is taken under it, the parties and those claiming under them are bound thereby. In such circumstances, an agreement fixing the boundary line is not regarded as a conveyance of any land from one to the other, but merely the location of the respective existing estates and the common boundary of each of the parties." *Downing v. Boehringer*, 82 Idaho 52, 56–57, 349 P.2d 306, 308–309 (1960). (Citations omitted.)

Such agreed boundaries are controlling even if that boundary varies from the boundary set forth in a written legal description. *Paurley v. Harris*, 75 Idaho 112, 117, 268 P.2d 351, 353 (1954).

After reviewing the facts of this case, we conclude that the trial court erred in refusing to apply the doctrine of agreed boundary. It is undisputed in the testimony, and the trial court found, that the Seuberts and the Woodses entered into such an agreement, as reflected in Finding of Fact III:

"Subsequent to May 4, 1970 and prior to June 2, 1970 Seubert and Earl J. Woods, Jr., an agent for the Woods, went upon Parcel #1 and entered into an agreement as to the location of a certain point on Parcel #1, which point was located by reference to a bush, and which point was located for the purpose of dividing a 'flat' located upon Parcel #1. Woods and Seubert then paced off the distance from what they believed to be the North

868

boundary line of Parcel #1 in a southerly direction to said bush and concluded that said distance was 85 feet.

"The purpose of 'computing' said distance was to utilize the obtained measurement for the preparation of a deed whereby Seuberts would transfer to the Woods a portion of Parcel #1 and retain the balance for themselves."

In Finding IV the trial court found that the property deeded by the Seuberts to the Woodses was based upon "the 85 foot measurement referred to in Finding III [which] was in fact utilized in the preparation of Exhibit B [the warranty deed from Seubert to Woods] to divide [the property]...." In Finding V the trial court found that "neither the Seuberts nor the Woodses, at the time of the execution of the deed (Exhibit B), had a reasonable basis from which to conclude that the bush located on the flat referred to in Finding III was on the boundary line [contained in the legal description] dividing [the two parcels]," and "no attempt whatsoever was made by the Seuberts or Woods to survey or measure Parcel #1 (other than by 'pacing off' the distance) so as to assure that said bush would fall on the boundary between [their properties]."

From the foregoing findings, which are based on uncontroverted testimony, it is clear that the Seuberts and the Woodses agreed upon a location of the line separating their two properties, which apparently was noted by a bush. This location was determined by the parties pacing off from what was mistakenly thought to be the north property line. The bush, located 85 feet from what was believed to be the north property line, was to be the dividing line between the two properties. The legal description in the deed from Seubert to the Woodses was based upon the parties' agreement and upon the 85 feet that they subsequently paced off. Such an agreed boundary is controlling between the parties, even though the subsequent written legal description in the deed varies from the boundaries agreed by them. *See Paurley v. Harris,* 75 Idaho 112, 268 P.2d 351 (1954).

Since that agreement was binding between the Woodses and the Seuberts, the sole remaining question is whether or not that agreement was binding on the plaintiffs Duffs, who acquired the interests of the Woodses. The trial court in its findings of fact made no finding or determination whether or not the Duffs had knowledge of the agreement between the Woodses and the Seuberts. The trial court did find in Finding XIV that "[i]n purchasing Parcel #2 [the Woods parcel] and in determining the boundaries thereof the Duffs relied wholly upon the legal description of said parcel as is set forth in Exhibit C." However, that finding does not answer the question. If the record is uncontroverted that the Duffs did have either actual knowledge of the agreement between the Seuberts and the Woodses, or sufficient facts to put them on notice to inquire, then they cannot be *bona fide* purchasers for value even though they may have "relied wholly upon the legal description of said parcel as is set forth in Exhibit C," as the trial court found. *Langroise v. Becker,* 96 Idaho 218, 526 P.2d 178 (1974); *Paurley v. Harris,* 75 Idaho 112, 268 P.2d 351 (1954).

A review of the record establishes conclusively that the Duffs had such knowledge. While the testimony of Mr. Woods was that he told Duff at the time they were discussing the purchase that the mobile home and the property upon which it was located did not belong to the Woodses and thus would not be part of the sale, we base our conclusion entirely upon the testimony of the Duff.

Duff testified that when he contacted Woods about purchasing the property Woods told him that Seubert was the owner of the trailer, and when they had divided the property they had not bothered to go to the expense of obtaining a survey, and as a result they did not know exactly where the lines were. Duff acknowledged that Woods told him that they had a gentlemen's agreement about the line and that Woods "mentioned different trees and

bushes and stuff like that." Duff stated that he didn't inquire about the agreement.

Duff acknowledged that prior to purchasing the property he went out with the legal description from the deed from Seubert to Woods, which he acquired from the Idaho County Recorder's Office, and attempted to make his own determination of the location of the line between the Seubert and Woods property. He acknowledged that by tracing the metes and bounds description from the Forest Service property line, the 85-foot frontage of the Seuberts "came about in the middle of the trailer." After he signed the earnest money agreement on February 22, 1974, but before the transaction was closed or the balance of the purchase money paid and the deed received on April 1, 1974, Duff contacted Seubert but made no inquiry concerning the agreement with the Woodses or the apparent encroachment of the trailer house upon what Duff had determined to be the dividing line between the properties. On March 14, 1974, Seubert wrote a letter to Duff, stating:

"It would be a good idea for all concerned if we would pinpoint the location of the start of my 85-foot frontage, which Jack Woods and I agreed on, possibly with an iron pipe driven into the ground. At least in this way, it seemed to me that at least you and I would be in the clear with each other. I haven't

talked to him about this, but I am sure our mutual friend Jack would be glad to come with us to do this." [1]

Four days later, on March 18, 1974, plaintiff Duff responded to Seubert's March 14th letter, stating only:

"I thought that the only way we could be sure of the boundary lines is to have a licensed surveyor do it. Maybe we could share the cost, and the couple on the next place may also want to share in the cost. I don't think it would do any good to bother Jack as the line would have to be surveyed so we would know where to start." [2]

On cross examination and in response to the question, "From the date of March 18, 1974, when you wrote that letter to Mr. Ray Seubert until the time that you paid the ten thousand dollar purchase price to Mr. Woods and received your deed of April 1, 1974, did you contact Mr. Woods or make any further inquiry of him about the agreement that he apparently had with Mr. Seubert in reference to the boundary line between their two properties," Mr. Duff answered, "I don't think I did in between there."

From the foregoing summary of the testimony of the Duffs, it is obvious that he not only was made aware of the agreement between the Seuberts and the Woodses regarding their location of the property line

1. The full text of the letter dated "Cottonwood, Idaho, March 14, 1974," and addressed to Mr. Russell B. Duff, Route 1, Orofino, Idaho," is as follows:

"Dear Neighbor: After you were in the other day at my office, I received a form from the State to sign for entrance, which I have signed and returned to them. Anyway I got to thinking a little about our conversation. I seem to remember that you were somewhat thinking of reselling a portion of your land purchased next to mine. In any event, it struck me that it would be a good idea for all concerned if we would pinpoint the location of the start of my eighty-five foot frontage, which Jack Woods and I agreed on, possibly with an iron pipe driven into the ground. At least in this way, it seemed to me that at least you and I would be in the clear with each other. I haven't talked to him about this, but I'm sure our mutual friend Jack would be glad to come with us to do this. I am looking forward to seeing you down at that

good river place. But in the meantime, you might drop me a line or call. Sincerely, Ray, Raymond B. Seubert."

2. The full text of the letter, dated "Orofino, Idaho, March 18, 1974," and addressed to "Mr. Raymond B. Seubert, Box 97, Cottonwood, Idaho 83522," is as follows:

Dear Mr. Seubert: I received your letter today and will answer it right away. I don't plan on selling any of the land for at least six months, and I thought that the only way we could be sure of the boundary lines is to have a licensed surveyor do it. Maybe we could share the cost, and the couple on the next place may also want to share in the cost. I don't think it would do any good to bother Jack as the line would have to be surveyed so we would know where to start. If I get up to Cottonwood, I will drop in and see you. Yours truly, Russ, Russell Duff."

between their properties, but he was also aware that there had been no survey, that they were not sure of the line, and that they had merely paced off the distance between what they thought to be the north line and the bush which was to establish the dividing line between the properties. Further, his testimony clearly shows that, prior to purchasing the property, he paced off the 85 feet from what he had determined to be the north property line, and that the line went through the middle of the Seuberts' trailer which had been affixed to a concrete block foundation on the real property. The plaintiff Duff had sufficient knowledge of the agreed boundary between the Seuberts and the Woodses, and the encroachment of the Seubert trailer upon the land which he proposed to purchase from the Woodses, that he cannot claim to be a *bona fide* purchaser. Accordingly, the Duffs must take subject to the Seubert-Woods agreed boundary.

When the doctrine of agreed boundary was raised at trial, the trial court concluded that the doctrine did not apply since the uncertainty in this case was as to the location of the northern boundary of the property which was to be divided, and not as to the boundary line dividing the Seuberts' property from the Duffs' property. In ruling as it did, the trial court stressed that it would not correct the mistake made by Seubert and Woods when they "guessed" as to the northern boundary of the property rather than having a survey made. We disagree with the trial court and adopt the view that:

> "The fact that an accurate survey is possible is not conclusive of the question of whether a doubt exists as to the location of the boundary. The doubt may arise from the believed uncertainty which may be inferred from the circumstances surrounding the parties at the time the agreement is deemed to have been made, and if in good faith the parties resolve their doubt by fixing the location of the common boundary, it will be considered the boundary called for in the deed."

*York v. Horn,* 154 Cal.App.2d 209, 315 P.2d 912, 915 (1957).

*Accord Martin v. Lopes,* 28 Cal.2d 618, 170 P.2d 881 (1946).

Once a boundary line has been fixed under the doctrine of agreed boundary, that boundary is binding upon successors in interest who purchase with notice of the agreement. *Paurley v. Harris,* 75 Idaho 112, 268 P.2d 351 (1954). The general rule is that one purchasing property is put on notice as to any claim of title or right of possession which a reasonable investigation would reveal. *Paurley v. Harris, supra.* Accordingly, the Duffs are bound by the boundary line which was fixed by the agreement between the Seuberts and the Woodses. Thus, we reverse and remand to the district court to determine the exact location of the boundary line that was fixed by the oral agreement between Seubert and Earl Woods, Jr.

The Seuberts also contend that the district court erred in finding, "The evidence submitted by Seuberts to the jury on the claims of intentional infliction of emotional distress and intentional interference with use and enjoyment of property was insufficient as a matter of law to warrant the submission of said claims to the jury." The Seuberts contend that if the boundary agreement between Woods and Seubert is valid the trial court necessarily erred in granting directed verdicts on these issues. We disagree. A complete reading of the record indicates that insufficient evidence was presented to support either of these claims. The trial court's decision is affirmed with respect to these claims.

Finally, in light of the above, the award of attorney fees by the trial court is set aside.

Reversed and remanded for further proceedings. Costs to appellants. No attorney fees.

BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, J., dissents without opinion.

DONALDSON, Chief Justice, dissenting.

I dissent. I believe that the majority opinion makes findings of fact in order to

support its holding that this case should be based on the doctrine of agreed boundary. If the doctrine of agreed boundary applies, which I seriously doubt, the district court which heard the evidence and saw the witnesses should be the court to make such findings.

## ON REHEARING

A petition for rehearing in this matter was granted and the cause reargued. The Court has reviewed the record and considered the arguments presented by counsel.

BAKES, BISTLINE and HUNTLEY, JJ., continue to adhere to the views expressed and the conclusion reached in the July, 1985, opinion.

DONALDSON, C.J., and SHEPARD, J., continue to adhere to the views expressed in their earlier dissenting opinions.